**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 21 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

BENTLEY SCOTT POWELL,

    Defendant-Appellant.

No. 99-1145

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 98-CR-218-D)**

---

Sean Connelly, United States Department of Justice, Denver, Colorado (Thomas L. Strickland, United States Attorney, and Tim Neff, Assistant United States Attorney, with him on the brief) for Plaintiff-Appellee.

Charles S. Szekely, Assistant Federal Public Defender, Denver, Colorado (Michael G. Katz, Federal Public Defender, with him on the brief) for Defendant-Appellant.

---

Before **TACHA**, **HOLLOWAY**, and **BRORBY**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

This is a timely direct appeal from the defendant/appellant's conviction for kidnapping for sexual gratification, contact, exploitation, and assault in violation of 18 U.S.C. § 1201. Because the defendant's prior criminal history made him a career offender under the federal sentencing guidelines, the district court sentenced him to life imprisonment. We have jurisdiction under 28 U.S.C. § 1291.[1]

I.

THE FACTUAL BACKGROUND

Defendant/Appellant Bentley Scott Powell was a guest at the Colorado Springs, Colorado home of Lanita Adamic, her boyfriend Linn Greschke, and her thirteen year old daughter, referred to herein as Jane Doe. On May 6, 1998, Lanita Adamic, because her car had been stolen, asked Powell to accompany Jane on an errand to the Circle K, a local convenience store, where she was to purchase toilet paper and then deliver it to a neighbor.

However, after the purchase and delivery were completed, Powell did not drive Jane home; instead, he took her on a multi-day, multi-state sojourn during which time, according to some testimony elicited at trial, Powell subjected Jane to repeated sexual assaults.

Jane testified at trial that after the delivery was completed, Powell told her that he had seen John Greschke (son of Lanita Adamic's boyfriend) driving her mother's stolen car and

---

[1] Defendant filed a Motion to Supplement the Record with the two sets of questions posed by the jury during deliberations. Appellant's Opening Brief at 8, n.4. We grant defendant's motion and note that the Appellee's brief cites Appellant's supplemental material.

that they should follow him if they wanted to recover the vehicle. Some testimony at trial suggests that this story was a fabrication; Deputy Sheriff Fontenot of Ville Platte, Louisiana testified that Lanita Adamic's car was recovered two miles south of Mamou, Louisiana on May 7, and that the car had been there since the previous evening. 6 R. at 681.

Rather than search for Lanita Adamic's car, however, Jane testified that the defendant drove her to the Cheyenne Mountain area near Colorado Springs, Colorado. See 4 R. at 336-37. Jane testified that while at Cheyenne Mountain, Powell provided her with marijuana which they smoked together. After smoking a "baggie" of marijuana, Powell offered Jane a beer, and when she declined, drank it himself. After approximately half an hour, Powell drove them down a road until they stopped. At that point, Powell asked her to take off her shirt. Jane testified that when she refused, he ordered her to do so, and upon her continued refusal, Powell produced a metal bar, hit it several times against the seat and again repeated his demand that she remove her shirt. Jane testified that, frightened, she complied, removing her shirt and bra, whereupon Powell proceeded to fondle her for the next fifteen minutes. Id. at 357-58.

According to Jane's testimony, Powell then drove to the side of a tunnel where he compelled her to touch and perform an oral sexual act on his private part, causing Jane to vomit. See id. at 358-62. Powell subsequently attempted to force Jane to submit to anal sex. According to Jane's testimony, over the next two days, during which time the two entered New Mexico and possibly Texas, Powell subjected her to additional sexual assaults. Jane

Doe testified that she remembered seeing a "welcome to Texas" sign and then went to sleep. 4 R. at 487. She also testified that Powell took some car jacks to a pawnshop in Las Vegas, New Mexico. Id. at 392. The only cities Jane could identify as being in were Albuquerque, New Mexico and Las Vegas, New Mexico, according to her testimony. Id. at 495. Ultimately, on the night of May 9, 1998, Powell drove Jane back to the Circle K convenience store in Colorado Springs, where Powell was arrested.

Defendant Powell was indicted and charged with kidnapping in violation of 18 U.S.C. § 1201 which provides in pertinent part:

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when–
>
> > (1) the person is willfully transported in interstate or foreign commerce . . . shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

The indictment charged that:

> Beginning on or about May 6, 1998, and continuing through and including May 8, 1998, in the State and District of Colorado, the defendant, Bentley Scott Powell, did unlawfully and willfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold, Jane Doe, a child under the age of eighteen years, and Bentley Scott Powell did willfully transport Jane Doe in interstate commerce from the State of Colorado to the State of New Mexico for reward or otherwise, namely: for sexual gratification, contact, exploitation and assault.

The defendant did not testify at trial. The defense did call as witnesses, among others, Jane Doe's step-mother, a Denver social services caseworker, and expert witnesses who testified to Jane Doe's lack of credibility and in support of the defense's theory that Jane Doe

- 4 -

consented to interstate travel with the defendant. On appeal, the defendant does not challenge the sufficiency of the evidence against him.

The jury found Powell guilty and he appeals his conviction on that verdict. The defendant presents essentially four claims of error: (1) that the trial judge's denial of two motions to exclude prospective jurors for cause during voir dire deprived the defendant of his right to a fair trial by impartial jurors; (2) that the judge erred by failing to reiterate the prosecution's need to meet its burden of proof on all the elements of the offense, and by failing to provide the jury with a specific unanimity instruction, when he charged the jury, sua sponte, that although one element of the indictment read in the conjunctive, that element could be proved by the Government in the disjunctive; (3) that the trial judge's exclusion, under Federal Rules of Evidence 412 and 403, of evidence proffered by the defendant concerning the complaining witness's past sexual behavior violated defendant's rights under the Fifth and Sixth Amendments; and (4) that the cumulative effect of these errors deprived the defendant of his Fifth Amendment right to a fair trial. We address each argument in turn.

II

THE JURORS

A.

During voir dire, defendant moved to exclude two prospective jurors – Gail Ward and Charlene Onken – for cause, arguing that they would not be able to serve with impartiality. The trial judge denied both motions. The defendant used his final peremptory challenge to

excuse Ms. Ward. Consequently, he had no remaining peremptory challenges with which to excuse Ms. Onken, who sat on the jury. Defendant now argues on appeal that the trial judge's decision to deny these two for-cause challenges to prospective jurors violated his Sixth Amendment right to trial by an impartial jury and his Fifth Amendment right to due process. See Appellant's Opening Brief, at 23. Defendant also argues in his brief that the trial judge's failure to grant his for-cause challenge against Ward forced him to use his final remaining peremptory challenge, thereby depriving him of a due process right of later use of that peremptory challenge.

However, as defendant's counsel recognized at oral argument in connection with his challenge to juror Ward, the Supreme Court's recent opinion in United States v. Martinez-Salazar, 120 S. Ct. 774 (2000), precludes his reliance on the Ninth Circuit's Martinez-Salazar holding. Martinez-Salazar, 120 S. Ct. at 777, reversed the Ninth Circuit and held:

> We reject the Government's contention that under federal law, a defendant is obliged to use a peremptory challenge to cure the judge's error [in not excusing a biased juror]. We hold, however, that if the defendant elects to cure such an error by exercising a peremptory challenge and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right.

Under this holding, there was no error as to Ward. She was excused by a peremptory challenge and did not sit on the jury. Here defendant's rights as to peremptory challenges and to a fair trial were not infringed in light of the Martinez-Salazar holding.

B.

Defendant's second challenge concerns juror Charlene Onken. Onken disclosed

during voir dire that "[m]y daughter was raped at college at the age of 18." 3 R. at 238-39. The trial judge then inquired: "The fact that your daughter was raped at age 18 – is that going to make it difficult for you to be fair to either side in this case?" Onken replied: "No. I can be fair." Id. at 239.

During supplemental voir dire by counsel for the defendant, Onken was called to the bench and was asked by the trial judge to explain further the circumstances of her daughter's rape. Onken related that her daughter had been "coming home from a party, and she was with an acquaintance, and she asked to go in and call a friend, and when she got in the house, [her acquaintance] forced himself on her, and she couldn't get away from him. And it was, you know, just very traumatic for her . . . ." Onken then explained that her daughter never filed charges or told anyone other than her. Id. at 240.

Counsel for defendant then asked if "[b]ecause of your experience with your daughter . . . is it going to cause you concern in this case in dealing with the evidence?" Onken responded that "I don't know – this wasn't rape in the case here, I don't think." When counsel for defendant balked at further discussing the facts of the case, i.e. whether the case involved allegations of rape, the trial judge interjected "[y]ou've heard what the indictment says, so I think you just need to go with that and what the Court said." Id. at 241. In response, Onken stated: "You know, I don't know the facts. I want to be honest -- I can't say yes or no because I don't know for sure . . . I mean, I felt for her, how bad she felt. . . . I felt her pain. And so, until I know the facts, if this girl was hurt. I don't know. I have to be

honest with you." Id.

Counsel for defendant then proceeded with questioning as follows:

Q. If the facts in this case show that there was a rape . . . would that so affect you that it would cause you to be so prejudiced against the defendant you couldn't judge other issues in the case?
A. Yes. If it showed rape.
Q. Okay. And you couldn't judge those other issues fairly?
A. The other issues, besides rape?
Q. Right.
A. I could that, those other issues, but not rape, I couldn't.
Q. He's charged here with kidnapping.
A. Okay.
Q. And what I'm saying is if the evidence shows that he did a rape?
A. Did a rape.
Q. Yeah. . . . Would that so prejudice you based on what's happened that you couldn't fairly judge the other evidence in the case, the other issues that you're going to . . .
A. I think I could be fair. But I said the rape would influence me some.
Q. It would influence you?
A. Oh, yeah, the rape would.
Q. It would influence how you view the other evidence in the case?
A. They're all related, I think.

Id. at 243-45.

At this juncture, the trial judge interrupted counsel's questioning to tell Onken that the "defendant here is charged with kidnapping." The trial judge then proceeded to question Onken as follows:

Q. And if you're selected as a juror, before the jury deliberates, I will explain to you the elements of kidnapping.
A. Okay.
Q. As a matter of law, which I'm not going to do right now. Would you be able to follow the Court's instructions of law as to what kidnapping is?
A. Yes. Yes.
Q. And would you allow your personal sympathies regarding your daughter's

- 8 -

situation to override what the Court instructs you as to be the law of the case?

A. Yes. I'm sure I could.

Q. You let your personal situation override my law on the case?

A. No. Your instructions – I believe I could listen to.

Q. And follow them?

A. I believe so, yes.

Q. And put your personal situations aside?

A. Yes. I would really try to.

Q. Do you think you could do that is my question.

A. Yes. I know you don't want these maybe answers.

Q. Yes.

A. I would say yes.

Q. No, no, no. You don't have to say anything. I'm asking for your honest answer. The trial is fair if the jurors . . . can put aside all the personal issues they bring to court and base the case as solely as possible on what they hear in court and my instructions of law, and so we just want to know if you're someone who can do that - that's my question.

A. Yes, I can be somebody like that.

Id. at 245-46.

Counsel for defendant then moved to strike Onken from the jury for cause, arguing that her daughter's rape would "so infect her ability to judge the other evidence regardless of what she says . . ." Id. at 247. At this point, the trial judge again questioned Onken:

Q. How long ago was your daughter raped?

A. Okay. That was ten years.

Q. Okay, ten years?

A. Ten years ago.

Q. How did you find out about it?

A. She told me probably about three weeks after it happened.

Q. So you found out about it about ten years ago?

A. Yes. Yes. Yes.

Q. Now, I want to ask you this one more time so I'm clear. The charge in this case is kidnap.

A. Kidnap, yeah, right.

Q. And as the indictment reads, the defendant did willfully transport Jane Doe in interstate commerce from the state of Colorado to the state of New Mexico for reward

or otherwise; namely for sexual gratification, contacts, exploitation, and assault.

Now, the evidence that's going to be presented in this case will bear on this indictment. But the actual law of the case will not be presented to you until the end of the case. So I'm not going to try to explain to you what the elements of kidnapping are. My question is taking into account everything that's happened to you and your daughter, can you be a fair juror to the defendant and make your decision as to his guilt or innocence based solely on what you hear in court and my instruction of law?
A. Yes.

Id. at 248-49.

Defendant now argues that his right to a fair trial was violated because, he maintains, Ms. Onken was both actually and impliedly biased. The trial court's findings regarding actual bias of a prospective juror are reviewed for clear error. United States v. Cerrato-Reyes, 176 F.3d 1253, 1260 (10th Cir. 1999); Gonzales. v. Thomas, 99 F.3d 978, 986 (10th Cir. 1996) ("Whether a juror was actually biased is a factual determination we review only for clear error."). Findings as to implied bias are reviewed **de** novo. Cerrato-Reyes, 176 F.3d at 1260 ("We review the court's . . . findings as to implied bias de novo."); Gonzales, 99 F.3d at 986 ("Whether a juror was impliedly biased is a legal question we review de novo."). We have held that actual bias may be established in either of two ways: "Actual bias can be shown by the express admission of the juror . . . of a state of mind prejudicial to a party's interest." Cerrato-Reyes, 176 F.3d at 1260 (internal quotation and citation omitted). Alternatively, actual bias may be "found by the court based upon the juror's voir dire answers." Id.; see also United States v. Torres, 128 F.3d 38, 43 (2d Cir. 1997).

The Supreme Court has instructed that a finding of actual bias "is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's

province." Wainwright v. Witt, 469 U.S. 412, 428 (1985). In other words, the "trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions." Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981) (plurality opinion by White, J.). Consequently, "an appellate court" cannot "easily second-guess the conclusions of the decision-maker who heard and observed the witnesses." Id.

Findings of implied bias are legal determinations dependent "on an objective evaluation of the challenged juror's experiences and their relation to the case being tried." Gonzales, 99 F.3d at 987 (internal citation omitted); see also Burton v. Johnson, 948 F.2d 1150, 1158 (10th Cir. 1991) ("We have no psychic calibers with which to measure the purity of the prospective juror; rather, our mundane experience must guide us to the impartial jury promised by the Sixth Amendment."). Consequently, "[u]nlike the inquiry for actual bias, in which we examine the juror's answers on voir dire for evidence that she was in fact partial, 'the issue for implied bias is whether an average person in the position of the juror in controversy would be prejudiced.'" Cerrato-Reyes, 176 F.3d at 1260 (quoting United States v. Torres, 128 F.3d 38, 45 (2d Cir. 1997)).

Thus, a finding of implied bias "is appropriate where the juror, although she believes that she can be impartial, is so closely connected to the circumstances at issue in the trial that bias is presumed." Cerrato-Reyes, 176 F.3d at 1260. We have set a high threshold for a

finding of implied bias, however. As we held in Cerrato-Reyes, the "implied bias doctrine is not to be lightly invoked, but must be reserved for those extreme and exceptional circumstances that leave serious question whether the trial court subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice." Id. (quoting Gonzales, 99 F.3d at 987) (emphasis added). In doing so, we look "for similarities that would inherently create in a juror a 'substantial emotional involvement, adversely affecting impartiality.'" Gonzales, 99 F.3d at 989 (quoting United States v. Allsup, 566 F.2d 68, 71 (9th Cir. 1977)).

Applying the principles stated above as to actual bias, we note that Ms. Onken waivered when questioned about her ability to put aside her experience with her daughter's rape. However, she ultimately told the judge that she could follow the court's instructions and would "really try to" put her personal situation aside. 3 R. at 245-46. While the issue of actual bias is troubling, we feel the judge's rejection of the claim of actual bias is sufficiently supported and not reversible. He closely observed Ms. Onken while he and counsel questioned her, and therefore we cannot easily second-guess his ruling. Rosales-Lopez, 451 U.S. at 188.

We turn now to the question whether there was a showing of implied bias which required the rejection of Ms. Onken. "A finding of implied bias" is appropriate when the juror, although she believes that she can be impartial, is so closely committed to the circumstances at issue in the trial that bias is presumed." Cerrato-Reyes, 176 F.3d at 1261.

As to implied bias we also conclude that the showing in the record is insufficient to require reversal of the judge's ruling allowing Ms. Onken to sit on the jury.

While we review de novo the trial judge's ruling on implied bias , here we are not persuaded that the ruling should be reversed.  Although implied bias may be found where there are compelling similarities between the experiences of the challenged juror and facts at issue in the trial at hand, we do not believe that the similarities between Onken's daughter's rape, and the facts at issue in Powell's case, are sufficiently congruous to cause a finding of implied bias on the part of Ms. Onken.  In  Gonzales, 99 F.3d at 990-91, for instance, a prosecution for rape, the defendant argued that a juror, herself a rape victim, was impliedly biased.  We disagreed. There was a passage of many years (25 years) from the juror's abuse to the time of the trial, and the involvement of the juror herself as the rape victim was more disturbing than the case here where instead the juror's daughter was the victim ten years before.[2]

In sum, we are persuaded that there was no reversible error by the trial judge in rejecting the claim of bias as to Ms. Onken.  Neither as to implied bias nor as to actual bias was a showing made in this record that requires a reversal.  We therefore reject the claim of error in the selection of the jury.

---

[2]Cf. Burton v. Johnson, 948 F.2d 1150, 1159 (10th Cir. 1991) (holding that a juror who was herself a victim of domestic abuse "would have been excused for cause" had she candidly answered questioning during voir dire where "battered woman's syndrome" was the defense to a first degree murder charge).

III.

THE INSTRUCTIONS

A.

Defendant argues that the trial judge erred in his response to a series of questions posed by the jury during deliberations. On the second day of deliberations, the jury communicated by note to the trial judge the following question:[3]

> Re:
> Instruction #20
> Seize, confine, inveigle, decoy, kidnap, abduct, <u>and</u> carry away
>
> <u>Do we have to have agreement on all the definitions of kidnap.</u> [sic]
>
> Instruction 24 Said
> Part 1 Says seized, confined, inveigled, decoyed, kidnapped, abducted <u>or</u> carried away.

Appellant's Opening Brief, at Appendix E (emphasis in original).

Unsure as to the exact meaning of the jury's question, the trial judge declined to answer the query directly, telling them that "to the extent that you have underlined the words 'and' in instruction no. 20 and 'or' in instruction no. 24, the Court and the parties aren't clear as to exactly what you're asking." As a result, the trial judge referred the jury "back to the jury instructions as a whole and each of the definitions set forth in the jury instructions, hoping that will answer part of your questions." 9 R. at 1397. He explained that it "would

---

[3]In addition, the jury asked "[c]an we know if Bentley has been charged with sexual assault?" The trial judge's decision to decline to answer this question is not challenged in this appeal.

- 14 -

be helpful, if you choose to do it, is . . . write a more specific question that asks something. Because the way this is currently phrased, it's very difficult for us to understand exactly what you're asking. . . ." Id.

The court then recessed. When the court reconvened some 38 minutes later that morning, the trial judge received a supplemental question posed by the jury. Id. at 1400. This second question stated:

> According to Instruction 20 and 24 there is a discrepency [sic] between 'and' meaning 'all' and 'or' meaning only 'one'
> In order to determine a verdict
>
> Did the defendant have to seize <u>and</u>
> Did the defendant have to confine <u>and</u>
> Did the defendant have to inveigle <u>and</u>
> Did the defendant have to decoy <u>and</u>
> Did the defendant have to kidnap <u>and</u>
> abduct and carry away?
>
> Must all of these conditions be met, as a whole, to determine a verdict?
>
> Or Can any one of these conditions stand alone?
>
> Instruction #20 says 'and' in listing these conditions as if each action must be committed.
>
> Instruction #24 says 'or' in listing these conditions as if any one on its own is enough to determine a verdict
>
> [Foreperson]

Appellant's Opening Brief, Appendix F (emphasis in original).

Having been tendered this more specific question, the trial judge identified the "real issue here" as

- 15 -

a conflict between the words of the indictment and what the statute says. The statute, 18 U.S.C. section 1201, which is accurately recited in one of the jury instructions uses the word "or." . . . Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person.

The trial judge then observed that "in the indictment, it says that Bentley did unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away." In other words, "the word 'and' is used in the indictment rather than 'or.'" Consequently, the trial judge said "the basic question here" is that "there a discrepancy between the statute that's invoked in the indictment and the actual language of the indictment." 9 R. at 1401.

Unsure "what the right law is on this issue," the trial judge told counsel that "I have no choice but to refer [the jury] back to the instructions as a whole with two caveats." The trial judge said he would "reiterate that instruction no. 20 sets forth the indictment, which is merely a charge in this case," explain that instruction No. 23 "sets forth the statute that is the statutory language which articulates the crime of kidnapping," and remind the jury that instruction No. 24 "defines what the government's burden is, and more importantly, the three essential elements of this charge." 9 R. at 1412-13.

Consequently, in response to this second set of questions from the jury, the trial judge called the jury in the courtroom. He told them: "I am not going to answer this question directly, but there is some things that I will say because you've submitted this question." The judge said that "the Court believes that the instructions as a whole and viewed in their entirety provides sufficient legal guidance to the jurors so that you have within your

possession all of the law that relates to each of the elements of this offense." Thus, the trial judge explained that "by referencing to these instructions as a whole, you can get some guidance." Id. at 1420.

The trial judge also explained to the jury that "I do want to point out that instruction no. 20 indicates what the indictment charges," and that "Instruction no. 23 specifies what 18 U.S.C. section [1201] says, which is the statute that defines the offense of kidnapping and is the law which was allegedly violated by the defendant." Id. The judge also told the jury that "instruction 24 sets forth the three essential elements which the government must prove beyond a reasonable doubt. And I'm not going to read them, but they say what they say," id., and that "instruction 33 sets forth the defendant's defense of consent. In there it specifies what that means, and it also says what it means." Id. at 1421. Finally, the trial judge explained that:

> even though the Court has specifically referred to instructions 20, 23, 24, and 33, I want to reiterate that by doing that, I'm not giving undue emphasis to those instructions; I'm not asking you or encouraging you to single those out; but I thought that in fairness to some of the things set forth in your question, that it would be appropriate for the Court to say what it said. But that's all I'm going to say. Because it's up to you to reach a verdict; and so with those comments, you're instructed by me to return to the jury room and continue your deliberations.

Id. at 1421.

When the court reconvened the next morning, the trial judge informed counsel for the parties that upon further reflection he had decided to supplement his previous instructions to the jury. 10 R. at 1425 ("We don't have any further requests from the jury, but upon deep

reflection, I think I believe the Court needs to give a clarifying instruction on the and/or.").

The judge said he would read his proposed instruction and let each side make a record:

> The indictment alleges that 18 U.S.C. section 1201 was violated by various acts which are in the indictment joined by the conjunctive "and." It is sufficient for a finding that element 1 of the offense of kidnapping referenced in instruction 24 has been proven if the evidence established beyond a reasonable doubt a violation of any of the acts described in that element. Thus for purposes of the government's proof of element 1 only, "and" means the same as "or."

10 R. at 1425.

Defense counsel then objected to giving any further instructions because the jury had not sent out a note for further clarification. Id. at 1428. He added that if the judge insisted on giving the instruction, defense counsel would insist on an instruction to the effect that inveigling and decoying was but the first element and that there still had to be a holding of the person "against their will," that had to be proven "beyond a reasonable doubt." Id.

Thereupon the trial judge informed the jury that:

> Upon reflection, I determined that I had not given a sufficient response to your second question yesterday. I'm not going to repeat it, but it's the one that dealt with issues regarding instructions 20 and 24, the details of which are set forth in your note, which I won't repeat because all of you know it. I'm going to read you a further instruction that's in response to . . . the questions that the jury posed based on the Court's reading of your note. . . . The indictment alleges that 18 U.S.C. section 1201 was violated by various acts which are in the indictment joined by the conjunctive "and." It is sufficient for a finding that element 1 of the offense of kidnapping referenced in instruction 24 has been proven if the evidence established beyond a reasonable doubt the violation of any of the acts described in that element. Thus for purposes of the government's proof of element 1 only, quote, and, unquote, means the same as, quote, or, unquote. When I say or I mean O-R.

And so that's the further instruction. . . . So I want to reiterate, however, that this instruction is not to be singled out by you and it must be read in conjunction with all of the other instructions that I've previously given to you and which are in the set that you have in the jury room.

Id. at 1433.

B.

Defendant now challenges the trial judge's supplemental instruction on the grounds that the context in which it was given made it "erroneous, unresponsive, confusing, misleading, and prejudicial . . ." Appellant's Opening Brief, at 20. Rather than arguing that the trial judge's sua sponte charge to the jury was legally inaccurate,[4] Defendant suggests that

_____

[4]It is permissible for an indictment to use the word "and" although the statute employs the word "or." United States v. Daily, 921 F.2d 994, 1001 (10th Cir. 1991). As we have noted, it is "hornbook law that a crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive." United States v. Gunter, 546 F.2d 861, 868-69 (10th Cir. 1976); see also United States v. Pauldino, 443 F.2d 1108, 1112 (10th Cir. 1971) ("[W]e do not believe that the government's proof of some but perhaps not all of the prohibited modes of violating the statute constitutes a fatal defect in appellants' conviction. It is settled that where a crime denounced disjunctively in the statute is charged in the conjunctive, proof of any one of the allegation will sustain a conviction.").

Our opinion in United States v. Austin, 933 F.2d 833 (10th Cir. 1991), is instructive. In that case, the defendant had been tried for violating 18 U.S.C. § 111, which provides that whoever "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties" is guilty of the offense charged. Austin, 933 F.2d at 843 (emphasis added). The indictment, however, charged the defendant in the conjunctive, alleging that he had done all of the unlawful actions specified in the statute. See id. During their deliberations, the jury sent the trial judge a note asking a question similar to the one posed by the jury in Powell's trial. The Austin jury inquired: "Instruction #2 . . . states an 'and' statement. However, instruction #7 states an Or statement. Which is correct? Under section 111(a)(1) -- law or indictment--." In response, the trial judge instructed the jury that "You should determine the case on the basis of instruction 7," which stated in the disjunctive the means by which the offense could be committed. On appeal, we held that the "law is

- 19 -

the jury's questions "raised an inference that the jury was confused as to the essential elements of kidnapping, the requirement of unanimity, or whether a finding on the first element enabled the jury to reach a verdict without further consideration of the additional elements." Id. Defendant argues that the trial judge committed reversible error by: (1) failing to repeat in his final supplemental charge to the jury an instruction that "lack of consent is an essential element of kidnapping"; and (2) failing to reiterate to the jury a specific unanimity instruction in light of the confusion expressed in the jury's two questions. Id. at 20-21. We address each of these arguments in turn.

1.

First, defendant argues that the trial judge was required to re-emphasize to the jury the need for the prosecution to sustain its burden of proof for each of the three elements of kidnapping, including the lack of victim consent. See Appellant's Opening Brief at 21("Although earlier jury instructions referenced Mr. Powell's sole defense of consent, the court failed to repeat in its final supplemental charge this crucial instruction or reiterate that lack of consent is an essential element of kidnapping.").

We are unable to agree with Defendant that the trial judge's supplemental instruction was in error in this respect. When presented with a challenge to jury instructions, "we review

---

clear that such submission to the jury was proper, no fatal variance being involved." Austin, 933 F.2d at 843. We believe that the legal issues in Austin are indistinguishable from those presented here. Accordingly, we find no fault in the substance of the trial judge's sua sponte instructions to the jury.

the record as a whole to determine whether the instructions state the law which governs and provides the jury with an ample understanding of the issues and standards applicable." United States v. Zimmerman, 943 F.2d 1204, 1213 (10th Cir. 1991) (internal quotations omitted); see also United States v. Cardall, 885 F.2d 656, 673 (10th Cir. 1989); Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1271 (10th Cir. 1988). In conducting this inquiry, we are guided by the principle that the issue which we must resolve is "not whether the charge was faultless but whether the jury had an understanding of the issues and its duty to determine these issues." Zimmerman, 943 F.2d at 1213.

The Supreme Court has instructed that "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." Bollenbach v. United States, 326 U.S. 607, 612-13 (1946); see also United States v. Duran, 133 F.3d 1324, 1334 (10th Cir. 1998) ("When a jury indicates through its queries that it is confused as to important legal standards in a case, particularly where there is an apparent basis for the confusion, it is plain error for the district court not to clarify that confusion."). However, we believe that the trial judge's supplemental instruction to the jury here adequately satisfied the Court's admonition that the court must address a jury's confusion with "concrete accuracy." The first jury question was relatively vague and ambiguous; consequently, rather than risk causing further confusion by answering a possibly misinterpreted question, the trial judge prudently referred the jury back to his original instructions and informed them that if their confusion persisted they should pose another, clearer question.

Shortly thereafter, the jury did in fact present a second, more specific question. This second jury question placed in sharper focus the substance of the jury's confusion – the seeming inconsistency between the use of the conjunctive and disjunctive. Having thus ascertained the crux of the jury's confusion, the trial judge issued an appropriate supplemental instruction. As discussed above, the trial judge's <u>sua sponte</u> charge was an accurate statement of the law – indictments charging in the conjunctive may be proven disjunctively. See <u>Daily</u>, 921 F.2d at 1001. Here, the trial judge was explicit in his answer to the jury's query, unambiguously instructing the jury that: " <u>for purposes of the government's proof of element 1 only, 'and' means the same as, 'or    .</u>'" 10 R. at 1433 (emphasis added). We thus conclude that the trial judge's ultimate response to the jury's understandable confusion resulting from the discrepancy between the indictment and the statute comports with the mandate of <u>Bollenbach</u>. Moreover, that the trial judge did not yet again instruct the jury that lack of consent is an essential element of kidnapping does not disturb us.[5] Instruction No. 33 made very clear the jury's responsibility regarding the issue

---

[5]The trial judge had already reminded the jury on several occasions of the need to find lack of consent in order to convict the defendant. Before closing arguments, the trial judge charged the jury in Instruction No. 1 that "All the instructions of law given to you by the Court, those given to you at the beginning of the trial, those given to you during the trial, and these final instructions must guide and govern your deliberations." 8 R. at 1295. In Instruction No. 24 the trial judge charged the jury that "[i]n order to sustain its burden of proof for the crime of kidnapping as charged in the indictment, the government must prove the following <u>three elements</u> beyond a reasonable doubt." 8 R. at 1310 (emphasis added). Whereupon the trial judge explicitly delineated the three elements that must be satisfied to sustain a guilty verdict:
1, the defendant Bentley Scott Powell knowingly and willfully, seized,

of consent.  The trial judge here instructed the jury that the

> defendant has alleged the defense of consent. This is so for the reason that the <u>involuntariness of the seizure and detention is at the very essence of the crime of kidnaping.  In other words, the victims's lack of consent is a fundamental element of the crime required to be proved by the government beyond reasonable doubt.  Accordingly, should you find that the victim, [Jane Doe], was not being held against her will, but in fact accompanied the defendant voluntarily, you must find the defendant not guilty.</u>

8 R. at 1313 (emphasis added).

In sum, we are satisfied that the supplemental instruction, considered with the entire charge, adequately covered the government's burden of proof for the three elements of the kidnapping allegation, including the lack of the victim's consent.  In so concluding "we adhere to the crucial assumption underlying our constitutional system of trial that jurors carefully follow instructions."  <u>Francis v. Franklin</u>, 471 U.S. 307, 324 n.9 (1985).

2.

Second, defendant argues that it was reversible error for the trial judge not to give a unanimity instruction in conjunction with his <u>sua sponte</u> instruction.  Appellant's Opening Brief, at 21. ("[B]ecause the jury had expressed confusion through its two questions, a

---

confined, inveigled, decoyed, kidnapped, abducted, or carried away [Jane Doe];
2, [Jane Doe] was thereafter transported in interstate commerce while so seized, confined, inveigled, decoyed, kidnapped, abducted or carried away; and
3, the defendant, Bentley Scott Powell, held [Jane Doe] for ransom, reward, or otherwise; namely, for sexual gratification, contact, exploitation, and assault.

8 R. at 1310-11.

specific unanimity instruction was required."). We set out in the margin the unanimity instruction given here.[6]

Since the Defendant did not request a specific unanimity instruction at trial, we review the trial court's decision not to issue a specific unanimity instruction for plain error. United States v. Mills, 29 F.3d 545, 548 (10th Cir. 1994) ("Where, as in this case, a defendant does not request a specific unanimity instruction, we review the lack of such an instruction under the plain error standard."); United States v. Bedonie, 913 F.2d 782, 781 (10th Cir. 1990) ("Appellants . . . contend they were deprived of their right to a unanimous verdict. . . . Appellants' contention was not raised before the district court; therefore, we must review appellants' argument under the plain error standard.") (footnote omitted); United States v. Phillips, 869 F.2d 1361, 1366 (10th Cir. 1988) ("On appeal, Phillips raises for the first time the contention that the jury instruction given by the trial court . . . deprived him of a unanimous jury verdict. . . . We thus also review Phillips objection to the lack of a specific

------

[6]The unanimity instruction appears as part of Instruction number 34:

> Your verdict must represent the collective judgment of the jury. In order to return a verdict, it is necessary that each juror agree to it. Your verdict, in other words, must be unanimous. It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for himself and herself but do so only after an impartial consideration of the evidence in the case with your fellow jurors.

8 R. at 1313-14.

unanimity instruction under the 'plain error' standard.") (footnote omitted).

Our leading case on the issue is United States v. Phillips, 869 F.2d 1361 (10th Cir. 1988). Phillips involved a defendant charged in a two count indictment with knowingly transporting a forged and falsely made security (two bad checks) in interstate commerce with intent to defraud in violation of 18 U.S.C. § 2314. Id. at 1363. To be convicted, the jury had to make four distinct findings: (1) that the checks were "falsely made and forged"; (2) that they were transported in interstate commerce; (3) that the defendant caused the checks to be thus transported; and (4) that the defendant did so intentionally. Id. at 1367. At the close of the trial, the judge instructed the jury on the definition of "falsely made and forged," charging that:

> A check is falsely made or forged for the purpose . . . of this law and this case if: one, the maker of the check was not authorized to sign on the account of which check was drawn; or two the check was drawn on a closed account; or three, the check was made payable to a fictitious payee and proof of any one or more of these is sufficient.

Id. at 1364 (emphasis added).

On appeal, the defendant argued that since individual jurors may not have agreed on the means by which the defendant "falsely made and forged," this jury instruction deprived him of an unanimous verdict. Id. at 1366. Rejecting this challenge, we held that "it is assumed that a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict." Id.; see also United States v. McClure, 734 F.2d 484, 494 (10th Cir.

- 25 -

1984). Consequently, "we assume that the jury unanimously reached a decision as to all factual predicates on which it based [defendant's] conviction." Phillips, 869 F.2d at 1367. Thus, although "the jury instruction defining 'falsely made and forged' might have allowed some members of the jury to determine that the checks were forged and falsely made in different ways," we noted that "that does not go to the crime charged but only to one of several elements." Id. at 1367. In other words,

> [t]he different methods in which the check might have been forged and falsely made did not constitute separate crimes for which Phillips was charged, or for which he could have been convicted under the indictment, they constituted different ways in which a single element of the crime for which he was charged might have been fulfilled.

Id. at 1368.

Phillips supports the rulings below. Here, as in Phillips, one of the elements of the offense could be proven through several alternative means. The trial judge properly instructed the jury that the first element of the offense could be proven by the prosecution demonstrating beyond a reasonable doubt that the defendant seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away Jane Doe. As in Phillips , where we upheld the trial judge's decision not to charge the jury with a specific unanimity instruction that they must all agree on the means by which the defendant had "falsely made or forged" a check, so too must we here hold that the trial judge did not commit reversible error by failing to instruct the jury that they must all concur on the means by which the defendant satisfied the

first element of the offense.[7]

Since trial of the instant case in November and December 1998 and during briefing of this appeal, the Supreme Court decided Richardson v. United States, 526 U.S. 813 (June 1, 1999). Richardson involved an appeal of a conviction for engaging in a "continuing criminal enterprise" in violation of 21 U.S.C. § 848. The statute defined a "continuing criminal enterprise" as involving a "violat[ion]" of the drug statutes where "such violation is a part of a continuing series of violations." 21 U.S.C. § 848(c) (emphasis added). At trial, the judge instructed the jury regarding the "series of violations" requirement that they "must

---

[7]We note that there is disagreement among the circuits on this point. In United States v. Ryan, 828 F.2d 1010, 1020 (3d Cir. 1987), the Third Circuit provided for four exceptions to our assumption that a general instruction on unanimity is sufficient. Ryan held that a specific unanimity instruction may be necessary: (1) in cases with exceptionally complex facts; (2) if a single count contains marginally related or contradictory allegations; (3) in cases in which there is some variance between the indictment and the proof offered at trial; and (4) (most relevant to this case), in cases with a tangible indication of jury confusion. See also Phillips, 869 F.2d at 1375 (Seymour, J., dissenting) ("The Third, Fifth, and Ninth Circuits have explicitly rejected the view that if the jury is in complete agreement as to the defendant's guilt, and sufficient evidence supports a finding of guilt under some applicable theory, an appellate court must affirm the conviction."); United States v. Beros, 833 F.2d 455, 461 (3d Cir. 1987) ("[J]ust as the sixth amendment requires jury unanimity in federal criminal cases on each delineated offense that it finds a defendant culpable, it must also require unanimity regarding the specific act or acts which constitutes that offense. Absent such certainty, the unanimity requirement would provide too little protection in too many instances.") (internal citation omitted); United States v. Payseno, 782 F.2d 832, 836 (9th Cir. 1986) ("When it appears however, that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice. To correct any potential confusion in such a case, the trial judge must augment the general instruction to ensure the jury understands its duty to unanimously agree to a particular set of facts.").

unanimously agree that the defendant committed at least three federal narcotics offenses." However, the judge added, "[y]ou do not . . . have to agree as to the particular three or more federal narcotics offenses committed by the defendant." Ricardson, 526 U.S. at 816. The jury convicted the defendant, but on appeal the Supreme Court reversed the conviction, holding that "unanimity in respect to each individual violation is necessary." Id.

Although in Richardson the Court held that a specific unanimity instruction was necessary, we conclude that that case does not require a reversal here. Richardson based its holding on drawing a distinction between the elements of an offense and means by which the Government may satisfy an element. Elements, the Court held, must be found unanimously by the jury. Id. at 817 ("[A] Jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proven each element.") (citing Johnson v. Louisiana, 406 U.S. 356, 369-71 (1972) (Powell, J., concurring). On the other hand, the jury need not agree unanimously on the means by which an element is proven. Id. ("[A] disagreement about means . . . would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element . . ."). Consequently, the Court held, "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." Id.; see also id. at 828 (Kennedy, J., dissenting) ("We begin on common ground, for . . . it is settled that jurors need not agree on all of the means the accused used to commit an offense."); Schad

v. Arizona, 501 U.S. 624, 649 (Scalia, J., concurring) ("[I]t has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission.").

Following Richardson's instruction that when determining whether a specific unanimity instruction is required we must differentiate between "means" and "elements," we conclude that here the various acts which the jury was to consider – seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold – fall closer to the "means" end of the means/element spectrum. Accordingly, we hold that the trial judge did not err in not charging the jury with a specific unanimity instruction.

In sum, we are persuaded that the instructions and the supplemental charge here were not in error.

IV.

EVIDENCE OF PRIOR SEXUAL CONDUCT

A.

Defendant next contends that the trial judge violated his Fifth Amendment right to due process and his Sixth Amendment right to compulsory process by excluding evidence of Jane Doe's past sexual behavior under Federal Rules of Evidence 412 and 403.

Rule 412 establishes the federal "rape shield" provision, whereby in proceedings involving alleged sexual misconduct, the admission of evidence concerning the victim's past sexual behavior or sexual predisposition is generally prohibited. Federal Rule of Evidence

412 provides in part that:

> (a) **Evidence generally inadmissible**. -- The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):
> (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.
> (2) Evidence offered to prove any alleged victim's sexual predisposition.

Rule 412 (b) establishes a series of exceptions to the general ban of Rule 412 (a) against admissibility of such evidence, by providing as follows:

> **(b) Exceptions.** –
>
> (1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:
> (**A**) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury or other physical evidence;
> (**B**) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and
> (**C**) evidence the exclusion of which would violate the constitutional rights of the defendant.

Before trial, the defendant notified the trial court of his intention to introduce evidence of Jane Doe's past sexual behavior pursuant to Rule 412 (b)(1)(C), on the grounds that its exclusion would violate his constitutional rights. See 1 R. Docs. 54-55, 78-79. Defendant proffered two witnesses who would testify in support of the defense of consent and to rebut inferences that Jane Doe was sexually naive, innocent, and unsophisticated prior to her alleged kidnaping. First, the defendant proffered that David Day, a nineteen year old Air

Force serviceman, would testify that once while Jane Doe was visiting his step-mother's home, Jane had flirted with him and had acted in an inappropriate manner. Specifically, Day would testify that Jane had rubbed up against him, stroked his thigh in a sexual manner, and had made sexual advances. See 1 R. Doc. 55; 2 R. at 22-23.("[S]he was getting very close to him, she was rubbing up against him, and she was stroking his thigh in a sexual manner.").

Second, defendant proffered the testimony of Cheri Park, a relative of Jane Doe, who would testify that during a Thanksgiving dinner in 1996, Jane, then eleven years old, "went to several of the adult males who were present, sat in their laps in a sexually suggestive manner and grabbed their crotch area, attempting to fondle the adult male's genitals." 1 R. Doc. 78 at 2.

Initially the trial judge expressed his inclination to admit the proffered testimony by Mr. Day and Ms. Cheri, stating that "this incident involving Mr. Day would be something that the defendant should offer as evidence because I think the Government would be opening that door based on the way it's presenting the case." 2 R. at 38. However, the trial judge decided to defer making a final ruling until he had heard Jane Doe's testimony, and he warned the prosecution that "if it turns out that the Government has portrayed [Jane Doe] in a way that is totally inconsistent with this incident, then I'm inclined . . . to let [the defendant] provide evidence . . ." Id.

Again, on the first day of trial, the trial judge reiterated that he would not decide whether to admit the proffered evidence until he had heard Jane Doe's testimony, stating that

"I'm not going to make a decision on that before I hear the government's evidence." 3 R. at 11. Moreover, the trial judge again warned the prosecution that

> if you paint this victim as someone who is very chaste, who's virginal and who . . . wouldn't engage in any of the conduct that [defendant] wants to introduce, then I think that has some bearing on whether or not I'm going to let it in. But if you don't portray her that way . . . then I'm less inclined to let it in.

Id. at 12.

Upon hearing Jane Doe's testimony, the trial judge decided to exclude the proffered evidence. See 4 R. at 611-14. The judge found that "I just don't believe that given the substance of [Jane Doe's] testimony . . . that there's been any testimony presented that would provide a springboard or basis upon which this Court could properly allow the jury to hear the two instances of 412 evidence the defendant wishes to offer . . ." Id. at 611. The trial judge explained that "in listening carefully to [Jane Doe's] testimony and taking into account the substance of the 412 proffers, I don't believe that there is any constitutional violation that will occur as to the defendant's ability to have a fair trial if this Court disallows the 412 proffers." Id. at 612. The judge stated further:

> We aren't dealing with a situation where the Court believes that there is a need to confront anyone, including the complaining witness, regarding these two incidents. The rape shield statute by its terms was designed to ensure that victims of rape wouldn't have their past sexual life thrown at them. And the only exception to that have [sic] been where these cases have indicated that there has been a past pattern of conduct by the complaining witness which if not disclosed in trial would preclude the defendant from his or her right to confrontation and Sixth Amendment or due process. I don't see any of those arguments being valid in this case.

Id. at 612-13.

- 32 -

The trial judge did not confine his exclusion of the defendant's two proffered witnesses to Rule 412, however. In addition, the trial judge rested his determination upon Rule 403,[8] stating that "looking at 403, the Court believes that even to the extent this evidence may be probative, that its probative effect is outweighed by its prejudice to the government's case, and so under Rule 403, the Court does not find that there is a basis for the allowance of this testimony." Id. at 613.

We review the trial judge's exclusion of defendant's proffered evidence for abuse of discretion. See United States v. Ramone, 218 F.3d 1229, 1234 (10th Cir. 2000) ("A district court's determination regarding the admissibility of evidence is reviewed for an abuse of discretion."). However we review challenges to rulings excluding evidence proffered by the defense de novo where the objections are based on Sixth Amendment confrontation rights. See United States v. Byrne , 171 F.3d 1231, 1234 (10th Cir. 1999) ("We review   de novo whether a defendant's Sixth Amendment confrontation rights were violated by cross-examination restrictions, and whether any such violation was harmless.") (quoting United States v. Gault, 141 F.3d 1399, 1403 (10th Cir.), cert. denied, 119 S. Ct. 253 (1998)).

Evidence adduced by cross-examination concerning prior sexual intercourse may be required to be admitted by Confrontation Clause rights where relevant and probative on a

---

[8]Federal Rule of Evidence 403 provides that: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

central issue of sexual offense charges. United States v. Begay, 937 F.2d 515, 521 (10th Cir. 1991). But where a proffered statement by a victim about unrelated consensual sexual intercourse was of little or no probative value as to whether a defendant was falsely accused of rape in the case on trial, the exclusion of evidence about test results did not deprive a defendant of a constitutional right. United States v. White Buffalo, 84 F.3d 1052, 1054 (8th Cir. 1996).

We believe that the trial judge acted correctly in excluding the defendant's proffered testimony under Rule 412. It is unquestionably true that "[a] defendant's right to due process and compulsory process includes the right to present witnesses in his or her own defense." Richmond v. Embry, 122 F.3d 866, 871 (10th Cir. 1997); see also Washington v. Texas, 388 U.S. 14, 18 (1967) ("The right to offer the testimony of witnesses . . . is in plain terms the right to present a defense . . ."); United States v. Bautista, 145 F.3d 1140, 1151 (10th Cir. 1998) ("The right to present a defense is a fundamental element of due process of law.") (internal quotation omitted). Nonetheless, restrictions upon a defendant's ability to present witnesses are permissible, and in determining whether "the trial court's exclusion of the proffered evidence violated [the defendant's] right to present witness testimony," we conduct a two-part inquiry. First, we examine "whether that testimony was relevant, and if so, whether the state's interests in excluding the evidence outweighed [the defendant's] interests in its admittance." Richmond, 122 F.3d at 872 (emphasis added). "This inquiry includes an examination as to whether more traditional factors such as prejudice, issue and jury

confusion weigh in favor of excluding the testimony." Id. Second, "we examine whether the excluded testimony was material – whether it was of such an exculpatory nature that its exclusion affected the trial's outcome." Id. (emphasis added).

In conducting this inquiry, we conclude that the trial judge's exclusion of the defendant's proffered testimony did not violate the defendant's rights under the Fifth and Sixth Amendments. Defendant sought admission of his proffered evidence on two grounds: first, "in support of his defense that [Jane Doe] consented"; and second, "to rebut inferences that [she] was sexually naive, innocent, and unsophisticated prior to her alleged kidnapping." Appellant's Opening Brief, at 31; 1 R., Doc. 65. Applying the Richmond test, we conclude that the testimony proffered by the defendant is, at best, only marginally relevant. We are unpersuaded by the suggestion that facts to which the proffered witnesses would testify – that [Jane] earlier touched men in a sexually inappropriate manner – is relevant to a determination as to whether she consented to travel with the defendant or to having sexual contacts with him on the occasions in question here. White Buffalo, 84 F.3d at 1054. We likewise believe that the relevance of Jane's alleged conduct to rebut any inference the jury may have drawn regarding her sexual naivety is too attenuated, particularly in light of Richmond's charge that we must balance the government's interest in excluding the proffered evidence against the defendant's interest in its admittance. As we noted in Ramone, 218 F.3d at 1235, Rule 412 "supports important interests implicated in sexual assault cases," including safeguarding the victim "against invasion of privacy, potential embarrassment, and stereotyping." Given the

nature of these important governmental interests, we are unable to conclude that the defendant's interest in admitting the proffered testimony is sufficiently weighty to warrant finding a constitutional violation.

Because we conclude that the trial judge did not err in excluding the proffered testimony under Rule 412, we do not reach the defendant's argument that the trial judge abused his discretion by excluding the same evidence under Rule 403.

V.

CONCLUSION

Defendant's final contention is that the cumulative effect of the trial judge's putative errors deprived him of his Fifth Amendment right to a fair trial. See Appellant's Opening Brief, at 37. Because, as discussed above, we find that the trial judge's conduct was not in error, we cannot agree.

Accordingly, we AFFIRM the judgment of the district court.