2006-NMCA-017

128 P.3d 500

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Andrew John NICHOLS, Defendant–
Appellant.**

No. 25205.

Court of Appeals of New Mexico.

Dec. 8, 2005.

73

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, for Appellee.

J. Robert Beauvais, P.A., J. Robert Beauvais, Ruidoso, for Appellant.

## OPINION

SUTIN, J.

{1} Defendant was charged by a grand jury with committing seventeen counts of

various sexual offenses against his biological daughter (Victim). The offenses included criminal sexual penetration (CSP), attempted CSP, criminal sexual contact of a minor (CSCM), and incest. The indictment stated that the offenses occurred between October 1, 1995, and February 25, 2003, although in the separate counts, the State charged more narrow time frames. During some of this time, Victim was under the age of thirteen. Following the trial, the seventeen counts were consolidated into six: one count each of CSCM with a minor under the age of thirteen, incest, attempt to commit CSP, and attempt to commit incest, and two counts of CSP of a minor. Defendant was convicted of all six counts.

{2} Defendant appeals on four grounds: (1) whether there was sufficient evidence of attempted CSP and attempted incest where Defendant claims that Victim's testimony was not credible, (2) whether the district court erred in instructing the jury that it could convict Defendant of CSCM for touching Victim's breasts and/or her vagina, (3) whether the district court abused its discretion in allowing, under Rule 11–801(D)(1)(b) NMRA, a prior statement, which Defendant argues was not consistent with Victim's testimony at trial, and (4) whether Defendant was denied notice and the ability to defend because of the large time spans submitted in the jury instructions. We affirm.

## BACKGROUND

{3} Victim testified that she was seven years old when her mother moved out of the house, and left her and her three brothers with Defendant, Victim's father. She testified that about six months after her mother left, Defendant started touching her inappropriately. Victim and her family lived in Roswell on and off from the time that Victim was seven until she was fourteen. During some of that time, Victim and her brothers lived in Artesia with Defendant's father, Defendant's stepmother, and his stepsister while Defendant lived in Arizona. Victim testified that no sexual misconduct occurred during this time in Artesia though Defendant visited her during that time. During the time in Artesia, Victim disclosed to Defendant's stepsister (Victim's stepaunt) that "John" had

touched her and "made her put her mouth there." Victim's stepaunt believed that by "John" Victim was referring to Defendant, whose middle name is John and who is known as John. At trial, Victim never testified that oral sexual contact occurred.

{4} At some point, Defendant retrieved Victim and her brothers and moved them first to Arizona, then to Washington, then back to Roswell in April 2002, shortly after Victim turned fourteen. Victim testified that, after moving back to Roswell, Defendant committed CSCM and digital CSP on her approximately a dozen times. She also testified that Defendant committed penile CSP on her three times since moving back to Roswell. For two of the acts of CSP, Victim was unable to give a specific date. Two of Victim's brothers testified to seeing inappropriate contact between Defendant and Victim during this time period. As for the third instance of CSP, Victim testified that it happened on February 25, 2003, the day before she was taken into foster care. Victim testified in detail as to Defendant's conduct on this date. The incident was not witnessed by anyone else and Defendant denied that it ever occurred. He also generally denied having had any sexual contact with or penetration of Victim. We discuss the facts in more detail later in this opinion as necessary.

## DISCUSSION

## I. THE STATE PRESENTED SUBSTANTIAL EVIDENCE OF ATTEMPTED CSP AND ATTEMPTED INCEST

{5} Defendant first argues that the State failed to establish substantial evidence of counts four and five, charging attempted CSP under NMSA 1978, § 30–9–11 (2003), and attempted incest under NMSA 1978, § 30–10–3 (1963). These counts were based on the conduct that occurred February 25, 2003, the day before Victim was put into foster care. Defendant argues that "[t]he only evidence, direct or circumstantial, that [Defendant] attempted CSP or attempted incest on February 25, 200[3] was the directly controverted testimony of the alleged victim." Defendant argues that Victim's uncorroborated, contradictory testimony does not establish beyond a reasonable doubt that the

alleged attempted CSP and attempted incest occurred.

{6} Victim testified as follows: On the night of February 25, 2003, she had fallen asleep in her father's room watching TV. Her father's live-in girlfriend, Donna, was not at the house at the time. When she woke up, her father was on top of her and there were candles lit in the room. Her father then retrieved some condoms out of his closet and put one on his penis. Her father told her that he wanted to "come inside her." He then placed his penis inside her vagina and started pushing, and it was very uncomfortable and hurt. She tried to scream or make a noise but could not get a sound out. At one point she managed to push him off of her and she went running to the bathroom to get away from him. He then called her back to the bedroom and tried to pull her back onto the bed but she managed to escape his grip. Defendant said a second time that he wanted to come inside of her. Victim grabbed her pajamas, ran back to the bathroom, got dressed and went back to where she normally slept.

{7} On cross-examination, defense counsel elicited testimony from Victim establishing that the day after this incident she told a police detective that she had never seen any condoms at the house and that she had never seen a condom. Defendant raises other contradictions, including, for example, that Victim testified that Defendant told her not to attribute any sexual contact to him but to tell the police the sexual contact was by a boyfriend, whereas, on cross-examination Victim testified that she told the detective her father had never discussed the sexual contact with her; that Victim denied any inappropriate contact by her father and was not lying to protect him; and that she told the detective she was a virgin.

{8} Defendant's insufficiency of evidence point is based solely on his argument that Victim's testimony regarding attempted CSP and attempted incest was not sufficiently credible to permit the jury to find Defendant guilty beyond a reasonable doubt. Defendant also challenges the sufficiency of the evidence by questioning whether a reasonable person could think Defendant was not

credible, viewing the evidence in a light most favorable to the State. For that proposition, he relies on *State v. Dominguez*, 115 N.M. 445, 455, 853 P.2d 147, 157 (Ct.App.1993), as citing the case of *State v. Sparks*, 102 N.M. 317, 694 P.2d 1382 (Ct.App.1985), which merely states that substantial evidence is evidence that is acceptable to a reasonable mind as adequate support for a conclusion and holds that the jury could reasonably have believed that the defendant acted in a particular manner. *Id.* at 320, 694 P.2d at 1385. Defendant's authority does not support his proposition. Defendant's standard is simply incorrect.

■ {9} "When determining the sufficiency of the evidence, the court views the evidence in a light most favorable to the verdict, considering that the State has the burden of proof beyond a reasonable doubt." *State v. Garcia*, 2005–NMSC–017, ¶ 12, 138 N.M. 1, 116 P.3d 72. We view the evidence in the light most favorable to the verdict and disregard any contrary evidence. *State v. Bennett*, 2003–NMCA–147, ¶ 19, 134 N.M. 705, 82 P.3d 72. "If evidence is in conflict, or credibility is at issue, we accept any interpretation of the evidence that supports the trial court's findings[.]" *State v. Wynn*, 2001–NMCA–020, ¶ 5, 130 N.M. 381, 24 P.3d 816. As an appellate court, we do not "substitute our judgment for that of the factfinder concerning the credibility of witnesses or the weight to be given their testimony." *State v. Sanders*, 117 N.M. 452, 457, 872 P.2d 870, 875 (1994). "An appellate court does not observe the demeanor of live witnesses, cannot see a shift of the eyes, sweat, a squirm, a tear, a facial expression, or take notice of other signs that may mean the difference between truth and falsehood to the fact finder." *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 127, 767 P.2d 363, 366 (Ct.App.1988).

■ {10} In prosecutions for criminal sexual penetration, "[t]he testimony of [the] victim need not be corroborated" and lack of corroboration has no bearing on weight to be given to the testimony. NMSA 1978, § 30–9–15 (1975). The appropriate formulation of the sufficiency of the evidence test in CSP

cases was succinctly stated in *State v. Hunter*, 101 N.M. 5, 7, 677 P.2d 618, 620 (1984):

> While the evidence was conflicting, it was not incredible. The jury, as the trier of fact, was entitled to weigh this evidence. The jury simply believed the victims' testimony and the evidence supporting it over Defendant's assertions that the incidents had not occurred. This Court will not substitute its determination for that of the jury.

(Citation omitted.)

■ {11} While Victim's testimony may have been to some degree impeached, it was nonetheless in the province of the jury as factfinder to decide whether to believe the Victim. Here the jury obviously determined Victim's testimony to be sufficiently credible for conviction. We will not disturb that determination. We thus conclude that there was sufficient evidence of attempted CSP and attempted incest. We hold that the district court did not err in denying the motion for directed verdict as to counts four and five charging attempted CSP and attempted incest.

## II. THE DISTRICT COURT DID NOT ERR IN INSTRUCTING THE JURY THAT IT COULD CONVICT DEFENDANT OF CSCM FOR TOUCHING "EITHER/OR" TWO DISTINCT PARTS OF VICTIM

■ {12} "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997–NMSC–044, ¶ 49, 123 N.M. 778, 945 P.2d 996.

{13} The district court instructed the jury that in order to convict Defendant of CSCM of a child under the age of thirteen, it must conclude that Defendant touched or applied force "to the vagina and/or breast" of Victim. Defendant argues that the district court erred in submitting this instruction to the jury. Defendant maintains that use of the disjunctive "negated the unanimity required to convict the Defendant," citing *United States v. Powell*, 226 F.3d 1181, 1194–96 (10th Cir.2000), and *United States v. Daily*, 921 F.2d 994, 1001 (10th Cir.1990), over-

ruled on other grounds as recognized by *United States v. Wiles*, 102 F.3d 1043 (10th Cir.1996) (holding that materiality is an element of perjury that must be found by a jury and that there was a structural error in not requiring the jury to find materiality), *judgment vacated by sub nom.*, *United States v. Schleibaum*, 522 U.S. 945, 118 S.Ct. 361, 139 L.Ed.2d 282 (1997) (referring to *Johnson v. United States*, 520 U.S. 461, 465–67 (1997), holding that materiality is an element of perjury which must be found by a jury and that a plain error analysis, rather than a structural error analysis, applies to the question of whether the district court erred in not requiring the jury to find materiality when the issue was not preserved). Neither *Powell* nor *Daily* assists Defendant.

{14} Defendant quotes *Daily* as stating "when requesting a statute which specifies various ways in which a particular crime may be committed ... if the State alleges the several acts in the disjunctive, it fails to inform the Defendant of the act he is charged with committing and is insufficient." Defendant cut language out of *Daily* and thereby cut out what was stated in *Daily*. The actual language in *Daily* is a quote from 1 C. Wright, *Federal Practice and Procedure* § 125, at 372–74 (1982). *Daily*, 921 F.2d at 1001. It discusses variances between statutes and indictments, stating:

> Frequently a statute will specify various ways in which a particular crime may be committed. It is enough to allege one of these ways without negativing the others. Or the pleading may allege commission of the offense by all the acts mentioned if it uses the conjunctive "and" where the statute uses the disjunctive "or." But if the indictment or information alleges the several acts in the disjunctive it fails to inform the defendant which of the acts he is charged with having committed, and it is insufficient.

*Id.* *Daily* pertains to the language in an indictment, not a jury instruction. We do not accept Defendant's apparent, unexplained view that *Daily* supports his position that a disjunctive in a jury instruction is error.

{15} Similarly, Defendant appears to cite *Powell* as holding or indicating that a "jury instruction deprived Defendant of a unanimous jury verdict." In *Powell*, the jury was instructed that it could convict the defendant of kidnaping under 18 U.S.C. § 1201 (1998) (amended 2003), if it found that the defendant "seized, confined, inveigled, decoyed, kidnapped, abducted *or* carried away" the victim. *Powell*, 226 F.3d at 1189. The district court had also instructed the jury with a general "unanimity instruction," which stated "[y]our verdict must represent the collective judgment of the jury. In order to return a verdict, it is necessary that each juror agree to it. Your verdict, in other words, must be unanimous." *Id.* at 1194 n. 6. The defendant was convicted and argued on appeal that the lower court erred in not specifically instructing the jury that it must agree unanimously on the means of kidnaping. *Id.* at 1194–95. The appellate court reviewed the issue for plain error as it was not preserved below. *Id.* at 1194. The United States Court of Appeals, after noting that other federal circuit courts disagreed, held that there was not plain error and that the jury need not unanimously agree as to the means by which the act of kidnaping was committed. *Id.* at 1195–96. Thus, *Powell* holds the opposite of what Defendant contends, namely, that the jury instruction did not deprive Defendant of a unanimous verdict.

{16} Focusing only on the part of the body at issue in this case, we conclude that the two theories upon which the jury could convict Defendant of CSCM, namely: (1) touching or applying force to Victim's breasts, or (2) touching or applying force to her vagina, were simply alternative means by which Defendant could commit CSCM, rather than distinct elements of CSCM. The statute prohibits unlawful and intentional touching of the intimate parts of a child. NMSA 1978, § 30-9-13(A) (2003). "Intimate parts" are further defined as including the primary genital area and the breasts. *Id.* The jury instruction elaborates on what parts of the anatomy constitute the primary genital area and lists vagina. UJI 14–925 NMRA (use note 4). Thus, these two acts are merely two means of satisfying the same element, which is touching the "intimate parts" of a child.

Finally, we note that the use note to the jury instruction directs the court to insert one or more of the body parts listed, without stating that the body parts must be listed in the conjunctive only. UJI 14–925 (use note 4). We conclude that the jury instruction did not erroneously negate the unanimity required to convict Defendant of CSCM. While we do not know whether the jury unanimously agreed on which of the alternative means by which Defendant committed CSCM, we do know that the jury unanimously agreed that Defendant committed CSCM, which is the controlling inquiry. *Cf. Salazar*, 1997–NMSC–044, ¶ 42, 123 N.M. 778, 945 P.2d 996.

{17} We conclude that the jury was not impermissibly instructed that it could convict Defendant of CSCM of a minor under the age of thirteen for touching Victim's breasts and/or vagina.

## III. THE DISTRICT COURT DID NOT ERR IN ADMITTING PRIOR CONSISTENT STATEMENTS UNDER RULE 11-801(D)(1)(b) NMRA

{18} Victim testified that she had told her stepaunt and her stepgrandmother that her father had touched her in inappropriate places. She testified that she did not remember the details of the conversations. Later, over objection, the State elicited testimony from Victim's stepaunt that Victim told her that "John" had "made her put her mouth there." When the State asked the question which elicited this testimony, and before the stepaunt responded to the question, defense counsel objected on the grounds of hearsay and a bench conference was held about the testimony. The State responded that the testimony was offered as a prior consistent statement under Rule 11–801(D)(1)(b). The district court allowed the testimony on that ground. Defendant now argues that this statement was not consistent with Victim's trial testimony.

{19} In addition, the State elicited from the Victim's stepgrandmother that the stepaunt told her that Victim had told the stepaunt that Victim "had been played with with a hand and mouth in that area." Defendant did not object on any ground to this testimo-

ny during the trial, but on appeal argues that the statement was not a prior consistent statement. The State does not raise lack of preservation or suggest that the plain error standard should be applied to this issue, but rather proceeds to address this evidentiary issue under an abuse of discretion standard.

{20} We review evidentiary decisions by the district court for an abuse of discretion. *Salazar*, 1997–NMSC–044, ¶ 65, 123 N.M. 778, 945 P.2d 996. Under Rule 11–801(D)(1)(b), a prior consistent statement is not considered hearsay and is admissible to "rebut an express or implied charge of recent fabrication or improper influence or motive." *State v. Sandate*, 119 N.M. 235, 239, 889 P.2d 843, 847 (Ct.App.1994); *see* Rule 11–801(D)(1)(b). The prior consistent statement must have been made before the alleged motive to fabricate occurred. *State v. Casaus*, 1996–NMCA–031, ¶ 18, 121 N.M. 481, 913 P.2d 669. The statement must also be consistent with the statement made in court. *Sandate*, 119 N.M. at 239, 889 P.2d at 847. New Mexico has had only a few opportunities to develop a standard for determining whether a prior statement is consistent with a statement at trial. Our Supreme Court has decided that prior statements which vary slightly from testimony at trial are admissible as non-hearsay under Rule 11–801(D)(1)(b). *See Salazar*, 1997–NMSC–044, ¶ 67, 123 N.M. 778, 945 P.2d 996 (concluding that negligible differences in testimony from a prior statement are inconsequential). *Salazar* stated that "the primary inquiry is whether the [prior statement] and trial testimony were substantially similar as to all material facts presented." *Id.* However, prior statements cannot be used to "fill in the gaps left by the faulty memory of a witness who actually testifies at trial." *Sandate*, 119 N.M. at 240, 889 P.2d at 848.

{21} In this case, the State argued at trial that the stepaunt's statement was admissible to rebut Defendant's claim that Victim fabricated all allegations of molestation or sexual activity due to pressure from either the police or the State Health and Human Services Department. Defendant does not question whether the prior statement preceded the alleged motive to fabri-

cate; he only argues that Victim's statement to her stepaunt was not consistent with Victim's testimony at trial. Defendant points out that Victim told her stepaunt that "John" had done this and did not say it was her father. He also points out that Victim never testified at trial as to any oral sexual contact.

{22} As to Victim's implication of "John" rather that "my dad" or "my father" in her prior statement, John is Defendant's middle name and Defendant goes by the name of John. In our view, given that Defendant's name is John, the statements are consistent with each other as to the perpetrator. The fact that Victim's younger brother is also named John does not negate the consistency when Defendant also went by John. Thus, we see no abuse of discretion based on the claimed discrepancy between the prior statement of Victim to her stepaunt about "John" and Victim's testimony at trial.

{23} The difference in the testimony regarding the oral sexual contact is more troubling. The stepaunt stated that Victim said that "John" had "made her put her mouth down there." The stepgrandmother mentioned oral contact as well as other contact. However, when Victim testified about what she told her stepaunt, Victim stated only that she told her that Defendant was touching her in inappropriate spots. Victim stated nothing at trial that would indicate she performed or attempted oral sexual contact, that oral sex was performed or attempted on her, or that she told her stepaunt anything about oral sexual contact.

{24} The question of whether the prior statements regarding oral sexual contact were "substantially similar" to Victim's trial testimony boils down to the level of specificity required; that is, whether the statements must be consistent as to every detail or consistent with the facts viewed more broadly. Viewed more broadly, the statements all show criminal sexual contact and to that extent they are consistent. Viewed more narrowly, there is a discrepancy.

{25} It may be that, in some cases, a more narrow view of the facts may be appropriate. That is, the distinction between oral and other sexual contact may, under other

circumstances, be significant enough for us to conclude that the district court abused its discretion in determining that a prior statement was a prior consistent statement. However, in this case, we believe that a broader view of the facts elicited in the statements is warranted given that Defendant's charge of fabrication is based on a broad-scale claim that there was never any sexual contact over the substantial periods of time to which Victim testified. Under the circumstances, we think the prior statements elicited from both the stepaunt and the stepgrandmother as having been made when Victim was twelve are similar enough to Victim's trial statement of sexual contact to pass abuse of discretion muster and thus to be admissible under Rule 11–801(D)(1)(b).

## IV. DEFENDANT RECEIVED SUFFICIENT NOTICE OF THE CHARGES AGAINST HIM AND WAS NOT PREJUDICED BY THE JURY INSTRUCTIONS

{26} Finally, Defendant contends that the State denied him constitutional due process and the ability to defend against two of the charges because of the large time spans covered in the jury instructions and because the charges were given to the jury "with respect to the same time period and with no distinct difference in the alleged conduct." Count two charged Defendant with CSP based on sexual intercourse occurring between April 12, 2002, and February 24, 2003, approximately a ten-month span. Count six charged Defendant with CSP based on digital penetration occurring sometime between June 2002 and February 2003, approximately an eight-month span. Defendant relies on *State v. Baldonado*, 1998–NMCA–040, 124 N.M. 745, 955 P.2d 214, which sets out a multi-factor test to review the reasonableness of the State's efforts to narrow the time frame for the crimes charged in the indictment.

{27} Under Rule 12–216(A) NMRA, "[t]o preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]" Case law instructs that "[i]n order to preserve an error for appeal, it is essential that the

ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." *State v. Varela*, 1999–NMSC–045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (internal quotation marks and citation omitted). "The primary purposes of the preservation requirement are (1) to alert the trial court to a claim of error so that it has an opportunity to correct any mistake, and (2) to give the opposing party a fair opportunity to respond and show why the court should rule against the objector." *State v. Montoya*, 2005–NMCA–005, ¶ 7, 136 N.M. 674, 104 P.3d 540 (internal quotation marks and citation omitted), *cert. granted*, 2005–NMCERT–001, 137 N.M. 17, 106 P.3d 579.

{28} Defendant contends that he preserved this issue during his motion for directed verdict at the close of the State's case and again at the close of the evidence. During the motion for directed verdict, the State requested permission to amend the charges to include ten counts of CSP based on digital penetration from June 2002 through February 2003 based on Victim's testimony that Defendant committed digital CSP on her about once a month during that time period. Defendant responded that under *Baldonado* and the doctrines of fair notice and due process, the State should not be allowed to submit that number of charges based on Victim's testimony that digital penetration happened once a month. Rather, Defendant argued that one count of CSP during the time period would be fair and reasonable. The district court only allowed one count of penile CSP and one count of digital CSP to go to the jury for the time period at issue. Defendant expressed no objection at the time.

{29} Later, at the close of evidence, the district court asked Defendant if he had any objections to the State's proposed jury instructions. Even though Defendant asked for clarification that the jury instructions concerning digital and penile CSP for the time frames charged were based on a continuing course of conduct and span of time, Defendant made no objection to these instructions nor in any other way alerted the

court that he believed the instructions were erroneous. Defendant in fact stated that he was satisfied that the instructions correctly instructed the jury. We conclude that Defendant did not preserve his arguments that under *Baldonado* he did not receive fair notice of the charges against him and that there was a violation of due process because of the broad period of time covered in the instructions as submitted to the jury.

{30} Moreover, *Baldonado* sets out a detailed nine-factor test for determining whether the State could have set forth more specific dates in the indictment and whether the defendant faced any prejudice under the counts as charged. 1998–NMCA–040, ¶ 27, 124 N.M. 745, 955 P.2d 214. As noted in *Baldonado*, application of this test "requires trial courts to engage in a most delicate exercise. It demands judging at its best." *Id.* ¶ 28 (internal quotation marks and citation omitted). In the case at hand, Defendant made no argument as to how the *Baldonado* test weighed against the broad time period at issue. Defendant, for example, presented no argument or facts that he could have asserted a plausible alibi defense or that the State's efforts to narrow the time frame submitted to the jury were not thorough. Nor did Defendant request the district court to perform such an evaluation. We conclude that it would be inappropriate for us to analyze this issue without a properly developed record or a fairly invoked ruling by the district court. As Defendant has failed to preserve this issue, we will not address it on appeal.

## CONCLUSION

{31} We affirm Defendant's convictions.

{32} **IT IS SO ORDERED.**

WECHSLER and ROBINSON, JJ., concur.