This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                                                    **NO. 32,505**

**ALBERTO ARANZOLA,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Sri Mullis, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**KENNEDY, Judge.**

## I.   INTRODUCTION

{1}     Alberto Aranzola (Defendant) appeals the district court's denial of his motion to suppress and challenges the sufficiency of evidence supporting his convictions. We conclude that the police in this case had reasonable suspicion to initiate contact based on having seen Defendant engage in two quick hand-to-hand transactions with two different people. Having seen Defendant attempt to swallow a small plastic bag containing an unknown substance upon recognizing approaching individuals to be police officers, the arresting officer acquired sufficient reason to seize Defendant in a more restrictive way. Therefore, Defendant's motion to suppress was properly denied. We also conclude that the State presented sufficient evidence to support Defendant's convictions.

## II.    BACKGROUND

{2}     A grand jury indicted Defendant on one count of drug trafficking with intent to distribute (in violation of NMSA 1978, Section 30-31-20(A)(3) (2006)), one count of tampering with evidence (in violation of NMSA 1978, Section 30-22-5 (2003)), and one count of possession of drug paraphernalia (in violation of NMSA 1978, Section 30-31-25.1(A) (2001)). Before trial, Defendant filed a motion to suppress, and the district court held a hearing on the motion. During that hearing, the arresting officer, Detective Linson, set forth the circumstances leading up to Defendant's arrest. Because the parties are familiar with the facts and this is a memorandum opinion, we do not recite those facts here but include some in our analysis below.

2

## III. DISCUSSION

### A. Defendant Preserved His Claims Under the New Mexico Constitution

**{3}** The State asserts that Defendant failed to preserve his New Mexico constitutional claims under *State v. Gomez*, 1997-NMSC-006, ¶¶ 22-23, 122 N.M. 777, 932 P.2d 1. However, we conclude that Defendant's assertions and factual basis presented below were adequate to preserve his claims. In *Gomez,* our Supreme Court set forth the interstitial approach to preservation under two circumstances: cases where established precedent "construes the provision to provide more protection than its federal counterpart," and where a state constitutional right "has not been interpreted differently than its federal analog[.]" *Id.* (emphasis omitted). Where the state constitution affords more protection than the federal constitution, "the claim may be preserved by (1) asserting the constitutional principle that provides the protection sought under the New Mexico Constitution, and (2) showing the factual basis needed for the trial court to rule on the issue." *Id.* ¶ 22.

**{4}** The Supreme Court reiterated and clarified this rule in *State v. Leyva*, 2011-NMSC-009, ¶¶ 40, 49, 149 N.M. 435, 250 P.3d 861, by articulating that "the proper inquiry under *Gomez* is whether the *provision* of the state constitution has previously been construed to provide broader protection than its federal counterpart[.]" *Id.* ¶ 48. "It is well-established that Article II, Section 10 provides more protection against unreasonable searches and seizures than the Fourth Amendment." *Leyva*, 2011-

3

NMSC-009, ¶ 51. Thus, "trial counsel must develop the necessary factual base and raise the applicable constitutional *provision* in [the district] court." *Id.* ¶ 49. It is often adequate to preserve an Article II, Section 10 claim through an assertion of greater protection and a development of necessary facts. *Leyva*, 2011-NMSC-009, ¶¶ 44-45 (citing *Montoya v. Ulibarri*, 2007-NMSC-035, ¶ 18, 142 N.M. 89, 163 P.3d 476); *State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶¶ 1, 13, 130 N.M. 386, 25 P.3d 225 (recognizing that an Article II, Section 10 claim was preserved where the defendant made argument that the state constitution provided protection sought and set forth a factual basis upon which the trial court could rule); *State v. Paul T.*, 1999-NMSC-037, ¶¶ 13, 26, 128 N.M. 360, 993 P.2d 74 (same); *State v. Granville*, 2006-NMCA-098, ¶ 14, 140 N.M. 345, 142 P.3d 933 (noting that the defendant need only have alerted the trial court to the legal issue and develop the facts necessary to ruling to preserve Article II, Section 10 argument).

{5}      Defendant satisfied both preservation requirements articulated by *Leyva* and *Gomez*. His motion to suppress clearly articulated Article II, Section 10 as grounds for his argument that the search and seizure of his person was unreasonable and violated both the federal and state constitutions. In addition, Detective Linson testified to the facts necessary to make a ruling, and the district court reached its decision after consideration of those facts and arguments from both counsel. This was sufficient to alert the district court of Defendant's claim. *See State v. Nichols*, 2006-NMCA-017,

4

¶ 27, 139 N.M. 72, 128 P.3d 500 ("The primary purposes of the preservation requirement are (1) to alert the trial court to a claim of error so that it has an opportunity to correct any mistake, and (2) to give the opposing party a fair opportunity to respond and show why the court should rule against the objector." (internal quotation marks and citation omitted)). As such, Defendant "fairly invoked" the district court's ruling on his claim under Article II, Section 10. Rule 12-216(A) NMRA.

**B.      Detective Linson Had Reasonable Suspicion to Stop Defendant**

**1.      Standard of Review**

**{6}**      The district court's denial of Defendant's motion to suppress presents a mixed question of law and fact. *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. We first look for "substantial evidence to support the [district] court's factual finding, with deference to the district court's review of the testimony and other evidence presented." *State v. Olson*, 2012-NMSC-035, ¶ 9, 285 P.3d 1066 (internal quotation marks and citation omitted). "We then review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of a search or seizure." *Id.* (internal quotation marks and citation omitted).

**2.      Seizure Under Article II, Section 10 of the New Mexico Constitution**

**{7}**      Article II, Section 10 of the New Mexico Constitution provides: "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches

and seizures[.]" New Mexico courts adhere to a broader interpretation of these protections than the Fourth Amendment provides. *See Leyva*, 2011-NMSC-009, ¶ 3 ("Because Article II, Section 10 provides greater protections against unreasonable searches and seizures than does the Fourth Amendment, we maintain the *Duran* standard for reviewing searches and seizures under the New Mexico Constitution."). Although Defendant preserved his claims under both the state and federal constitutions, we need only address the broader protections afforded under Article II, Section 10 of the New Mexico Constitution. *Olson*, 2012-NMSC-035, ¶ 10.

{8}     A seizure occurs under Article II, Section 10 " 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *State v. Garcia*, 2009-NMSC-046, ¶¶ 36-37, 147 N.M. 134, 217 P.3d 1032 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Possible indicators of a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Garcia*, 2009-NMSC-046, ¶ 39 (internal quotation marks and citation omitted). That said, "otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *State v. Affsprung*, 2004-NMCA-038, ¶ 12, 135 N.M. 306, 87 P.3d 1088 (internal quotation marks and citation omitted). Police are free to engage

6

people in consensual encounters; when compliance with a police officer's request is required, however, "[a] reasonable person would not feel free to leave and a seizure has occurred." *Garcia*, 2009-NMSC-046, ¶ 39; *cf. State v. Jason L.*, 2000-NMSC-018, ¶ 34, 129 N.M. 119, 2 P.3d 856 (Baca, J., dissenting) ("An officer is free to approach people and ask questions without violating the Fourth Amendment rights of the individual questioned.").

{9} In order to determine whether a reasonable person would feel free to leave, our courts examine "(1) the conduct of the police, (2) the person of the individual citizen, and (3) the physical surroundings of the encounter." *Jason L.*, 2000-NMSC-018, ¶ 15 (internal quotation marks and citation omitted). In *Jason L.*, the Supreme Court addressed how these considerations fit into our standard of review. *Id.* ¶ 19. The determination of what exactly were "the circumstances surrounding the stop, including whether the officers used a show of authority[,]" is a factual inquiry that we review for substantial evidence. *Id.* The determination of whether the circumstances amount to "a level of accosting and restraint that a reasonable person would have believed he or she was not free to leave" is a legal inquiry that we review de novo. *Id.*

{10} Following two apparent hand-to-hand transactions with two different people, each of short duration, Defendant was sitting in the driver's seat of a truck, which was parked at the curb of a street. An unmarked police car pulled in roughly 200 feet behind him. Another car, which was unmarked but identifiable as a police car, pulled

7

in front of Defendant's parked car.[1] Two detectives alighted from the car in front of Defendant and began to walk toward Defendant; although not in uniform, they were wearing their badges on chains around their necks. Detective Linson exited his car and approached the driver's side of the truck. Defendant, apparently unaware of Detective Linson's presence, began shoving a plastic bag containing an unknown substance down his throat while still looking at the officers in front of him. Upon seeing Defendant attempt to swallow the bag, Detective Linson identified himself as a police officer and ordered Defendant to stop what he was doing.

{11}     Although the officers parked in front of and behind Defendant's truck prior to this seizure, there was ample room for Defendant to leave. At the point when Detective Linson identified himself as an officer and gave Defendant a command, a reasonable person would not have felt free to terminate the encounter and walk away. *See State v. Lopez*, 1989-NMCA-030, ¶ 13, 109 N.M. 169, 783 P.2d 479 (stating that, generally, blocking a vehicle's progress is a form of physical restraint), *modified on other grounds by Jason L.*, 2000-NMSC-018. Similarly, there was more than one officer approaching Defendant. Their approach, however, was non-threatening; they were walking, not running or jogging, and they were not brandishing their badges or weapons during their approach. Until Detective Linson yelled to Defendant to cease

---

[1]It is unclear from the record exactly how far away the car was from Defendant's vehicle.

swallowing the baggie, the encounter was consistent with a consensual encounter. *Garcia*, 2009-NMSC-046, ¶ 38 (stating that a consensual encounter occurs when an officer acts "in a manner which would be perceived as a non[-]offensive contact if it occurred between two ordinary citizens." (internal quotation marks and citation omitted). Thus, Defendant was not seized under Article II, Section 10 until Detective Linson identified himself as a police officer and demanded that Defendant stop.

**3.      Reasonable Suspicion to Seize Defendant**

{12}      Having held that Defendant was seized under Article II, Section 10, we must next consider whether Detective Linson had reasonable suspicion to seize Defendant at that time. Reasonable suspicion is a particularized suspicion, based on all the circumstances, that a particular individual—the one detained—is breaking, or has broken the law. *Garcia*, 2009-NMSC-046, ¶ 43. In assessing the totality of the circumstances, "officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *State v. Neal*, 2007-NMSC-043, ¶ 21, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citations omitted).

{13}      We are concerned not with a single fact standing alone, but rather with all the circumstances known to Detective Linson when he seized Defendant. When the seizure occurred, Detective Linson had seen an unidentified man borrow a cell phone, make a short call, and set off down the street carrying some quantity of cash in his

hand. Detective Linson relocated in order to observe that individual further, and in doing so observed Defendant participate in two hand-to-hand transactions. In the first, an unidentified woman got into Defendant's truck, conducted the transaction, and left; the encounter lasted less than a minute. In the second, the unidentified man who had made the phone call flagged down Defendant from the side of the street. Defendant stopped and made another short hand-to-hand transaction with him. Detective Linson and the other officer then attempted to initiate a consensual encounter with Defendant. Upon approaching Defendant's vehicle, Detective Linson saw Defendant "shove" a plastic bag in his mouth and attempt to swallow it.

{14}     After seeing Defendant attempt to swallow a plastic bag full of an unknown substance with officers walking toward him, Detective Linson had reasonable suspicion to stop Defendant from doing so. Detective Linson was entitled to conclude, based on his training and experience, that two hand-to-hand transactions in less than ten minutes were consistent with drug trafficking. Detective Linson also could have regarded Defendant's attempt to swallow a plastic bag upon seeing two approaching police officers as sufficiently suspicious to justify a seizure.

**C.     Detective Linson Had Probable Cause to Arrest Defendant**

{15}     Defendant also asserts that Detective Linson did not have probable cause to arrest him. After Detective Linson seized Defendant, as described above, he grabbed Defendant's jaw in an attempt to prevent him from swallowing the plastic bag.

10

Detective Linson was unsuccessful, however, and Defendant ultimately succeeded in swallowing the bag. Detective Linson then removed Defendant from the truck and placed him in custody. After Defendant was in custody, Detective Linson removed a white substance from around Defendant's mouth, which field tests confirmed was cocaine. During a subsequent inventory search of Defendant's vehicle, a small digital scale was found on the driver's seat of the truck.

{16}    When reviewing warrantless arrests, we look to "whether it was reasonable for the officer not to procure an arrest warrant." *Campos v. State*, 1994-NMSC-012, ¶ 15, 117 N.M. 155, 870 P.2d 117. In order for a warrantless public arrest to be reasonable under Article II, Section 10, there must be both probable cause and exigent circumstances. *Id.* ¶ 14. Exigent circumstances are those "requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Id.* ¶ 11 (internal quotation marks and citation omitted). The test for exigent circumstances is objective; a warrantless arrest can be valid if "an objectively reasonable, well-trained officer could have determined that swift action was called for to prevent destruction of evidence[.]" *State v. Rowell*, 2008-NMSC-041, ¶ 30, 144 N.M. 371, 188 P.3d 95. "An officer has probable cause to arrest when the facts and circumstances within the officer's knowledge are sufficient to warrant the officer to believe that an offense has been or

11

is being committed." *State v. Granillo-Macias*, 2008-NMCA-021, ¶ 9, 143 N.M. 455, 176 P.3d 1187.

{17} Detective Linson's warrantless arrest of Defendant was reasonable because he had probable cause and exigent circumstances existed based on Defendant's swallowing the bag as the other officers approached. Based on Detective Linson's observations, it was objectively reasonable for him to believe an offense had occurred and was occurring. It was also objectively reasonable to believe that the plastic bag that Defendant was swallowing contained evidence of that offense because Defendant did not start shoving the bag into his mouth until it was apparent that he saw the police officers approaching him. Additionally, exigent circumstances existed because the destruction of evidence appeared imminent; Defendant had already swallowed the bag. Thus, Linson had probable cause to arrest Defendant. *See id.*

{18} We conclude that Detective Linson's seizure of Defendant was properly based on reasonable suspicion and that his arrest of Defendant was based on probable cause and exigent circumstances. Accordingly, we affirm the district court's denial of Defendant's motion to suppress.

**D.      Sufficiency of Evidence at Trial**

{19} Defendant asserts that there was insufficient evidence to support convictions for each of the three counts brought against him.

**1.      Standard of Review**

{20} Appellate courts reviewing a case for sufficiency of evidence must view the evidence "in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. We look at "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Id.* We will not disturb a verdict that is supported by substantial evidence. *Id.*

**2. Evidence was Sufficient to Support a Conviction for Drug Trafficking**

{21} A jury convicted Defendant of one count of drug trafficking with intent to distribute in violation of Section 30-31-20(A)(3). In order to obtain a conviction under this statute, the State had to prove four elementsunder the jury instruction given: (1) that defendant had cocaine in his possession; (2) that defendant knew it was or believed it to be cocaine; (3) that defendant intended to transfer it to another; and (4) that this happened in New Mexico. *See* UJI 14-3110 NMRA. Elements one, two, and four are not in dispute. Defendant asserts, however, that the State failed to present any evidence that Defendant intended to transfer cocaine to another person.

{22} The State may prove intent using inferences drawn from the surrounding facts and circumstances. *State v. Muniz*, 1990-NMCA-105, ¶ 3, 110 N.M. 799, 800 P.2d 734. Detective Linson testified that he believed he had seen Defendant engage in two

13

"hand-to-hand exchange[s]. He testified that Defendant had swallowed a plastic bag in his presence and that it was common for suspects to swallow narcotics when confronted by police. Detective Linson also testified that Defendant had a small digital scale sitting next to him in the truck that he was driving and that type of scale was commonly used in the distribution of narcotics.

{23}     From these facts, the jury could have made the inference that Defendant's actions evidenced an intent to transfer cocaine to others. The combination of that inference, the hand-to-hand transactions, and the presence of the scale was sufficient to prove the intent element of Section 30-31-20(A)(3). We therefore affirm Defendant's conviction for drug trafficking. *See Muniz*, 1990-NMCA-105, ¶ 3.

**3.     Evidence Was Sufficient to Support Conviction for Tampering With Evidence**

{24}     A jury convicted Defendant of one count of tampering with evidence in violation of Section 30-22-5. In order to obtain a conviction for tampering with evidence, the State must prove that Defendant hid cocaine with the intent to prevent the apprehension, prosecution, or conviction of himself. UJI 14-2241 NMRA. "When there is no other evidence of the specific intent . . . to disrupt the police investigation, intent is often inferred from an overt act of the defendant." *State v. Duran*, 2006-NMSC-035, ¶ 14, 140 N.M. 94, 140 P.3d 515. "Statements by defendants and

witnesses regarding the disposition of evidence may allow a jury to reasonably infer an overt act and intent[.]" *Id.* ¶ 16.

{25} Defendant argues that the proper conviction under the facts of this case would be *attempted* tampering with evidence because Detective Linson ultimately recovered cocaine from Defendant's person, despite Defendant's act of swallowing the bag. Defendant's argument is misdirected; a tampering conviction is not predicated on the actual recovery of the evidence in question. *See State v. Garcia*, 2011-NMSC-003, ¶ 13, 149 N.M. 185, 246 P.3d 1057. Defendant also claims that there was no evidence identifying the substance in the bag that Defendant swallowed, and thus, the State failed to prove that it was cocaine. Detective Linson provided testimony that Defendant swallowed the plastic bag containing an unidentified substance as soon as he saw police officers approaching him. Detective Linson revealed that it is common for suspects to swallow narcotics when they encounter police officers. Finally, he testified that he recovered small pieces of cocaine from around Defendant's mouth immediately after Defendant swallowed the bag. It is reasonable, from these facts, for the jury to infer that the substance in the bag was cocaine. *State v. Brown*, 1984-NMSC-014, ¶ 12, 100 N.M. 726, 676 P.2d 253 ("A material fact may be proven by inference."). We therefore conclude that there was sufficient evidence to support Defendant's conviction for tampering with evidence.

**4.      Evidence Was Sufficient to Support Conviction for Possession of Drug Paraphernalia**

{26}     The jury convicted Defendant of one count of possession of drug paraphernalia in violation of Section 30-31-25.1(A). In order to obtain a valid conviction for this offense, the State had to prove that Defendant had a scale in his possession and that he intended to use the scale to "prepare, test, analyze . . . or otherwise introduce into the human body a controlled substance." Section 30-31-25.1(A). The State undisputedly proved that Defendant had a small digital scale in his possession. It also presented evidence that scales of that size and type are frequently used in distributing narcotics. That evidence, along with the State's evidence that Defendant had cocaine in his possession and engaged in more than one hand-to-hand transaction, was sufficient for the jury to infer that Defendant intended to use the scale to weigh cocaine. We therefore conclude that the State proffered sufficient evidence to prove possession of drug paraphernalia beyond a reasonable doubt.

**IV.     CONCLUSION**

{27}     We affirm the district court's denial of Defendant's motion to suppress because Detective Linson had reasonable suspicion to stop Defendant, probable cause to arrest him. We affirm Defendant's convictions because the evidence presented at trial was sufficient to prove each element of each crime beyond a reasonable doubt.

{28}     **IT IS SO ORDERED**.

16

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**


_____

**JONATHAN B. SUTIN, Judge**


_____

**CYNTHIA A. FRY, Judge**

17