This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.                                                                          **No. A-1-CA-35123**

**ETHEL JACKSON,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. Shoobridge, District Judge**

Hector H. Balderas, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly M. Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

**{1}** Defendant Ethel Jackson appeals her conviction following a bench trial for aggravated battery (great bodily harm) in violation of NMSA 1978, Section 30-3-5(C) (1969). We affirm.

## I. BACKGROUND

**{2}** This case arises from an altercation between Defendant and Latoya Royal (Victim), wherein Defendant "bumped" Victim's chest with her own and Victim put Defendant in a headlock for approximately five seconds. While in the headlock, Defendant pulled a knife out of her pocket. Victim pushed Defendant after seeing the knife, at which point Defendant stabbed Victim in the chest. While being treated at a hospital for a punctured lung, Victim told a nurse that Defendant was the person who had stabbed her in the chest. Additionally, Victim told the nurse that Defendant was "with her man."

**{3}** The investigating officer, Detective Bryan Generotzky (Detective Generotzky), spoke with Victim who informed him that she and Defendant were "partying all night," and that Defendant was drinking alcohol and smoking methamphetamine and crack cocaine. Victim said they got into a physical altercation because Defendant grabbed a cigarette out of Victim's mouth while they were in a car together, angering Victim. Victim told Detective Generotzky that Defendant stabbed her with a small folding knife.

{4}     Detective Generotzky also interviewed Defendant twice. During the first attempt to interview Defendant, about fourteen hours after the incident, Defendant's behavior was "bizarre": she could not sit still, her speech was slurred, her eyes were bloodshot, and she was mumbling, jerking, rambling, and laughing for no reason. According to Detective Generotzky, Defendant's "cognitive thinking skills weren't there." Because of her condition, Detective Generotzky questioned Defendant fourteen hours later, when she was more coherent. Defendant's story significantly differed from Victim's. Defendant said she did come in contact with Victim, and Victim asked her for a "two-dollar hit," but Defendant was not "about to go look for that hit." In both interviews, Defendant denied they argued, denied she stabbed Victim, said she had no reason to stab Victim, and denied being in the car with Victim. Asked why Victim would say she stabbed Victim, Defendant said that Victim did not like her. Detective Generotzky agreed that Defendant's story was consistent, and that she recounted it over and over.

{5}     During trial, Defendant impeached Victim with her admission that she had a prior felony conviction for aggravated assault with a deadly weapon. Defendant also attempted to elicit testimony from Victim regarding the circumstances of her prior felony conviction. Defendant argued that Victim stated "her man was cheating on her with the victim in that case and that the victim in that case had stabbed her, yet she was not convicted." Instead, Victim was convicted of

3

aggravated assault with a deadly weapon because she attempted to stab the victim in that prior case. Defendant argued that the underlying circumstances of that case were similar to those in the present case, indicating Victim's bias and motive to lie. The district court excluded the testimony. Nonetheless, Defendant impeached Victim several times with inconsistent statements.

**{6}** In closing arguments to the district court, defense counsel said this was "not a self-defense case." Rather, counsel argued, Defendant was not the person who stabbed Victim, and, in the alternative, that Defendant lacked the specific intent required for aggravated battery because of her consumption of drugs and Victim's admission that she did not believe Defendant meant to hurt her. The State responded that Defendant's specific intent was apparent by the act of removing the knife from her pocket, approaching and stabbing Victim. After recognizing that Victim and Defendant were "using drugs," the district court found the State had proven that Defendant stabbed Victim and had the specific intent to injure her. The district court found Defendant guilty of aggravated battery.

## II. DISCUSSION

**{7}** Defendant appeals the district court's verdict, arguing: (1) the State failed to prove Defendant's guilt beyond a reasonable doubt, (2) the district court erred in excluding evidence regarding the underlying circumstances of Victim's prior felony conviction, and (3) defense counsel was ineffective.

4

## A.	Sufficiency of the Evidence

{8}	Defendant first argues that her conviction for aggravated battery was not supported by sufficient evidence. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). "In that light, the Court determines whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "Contrary evidence supporting acquittal does not provide a basis for reversal because the [finder of fact] is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "When a defendant argues that the evidence and inferences present two equally reasonable hypotheses, one consistent with guilt and another consistent with innocence, our answer is that by its verdict, the [finder of fact] has necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence." *State v. Montoya*, 2005-NMCA-078, ¶ 3, 137 N.M. 713, 114 P.3d 393. "[W]e presume that the judge in a bench trial is able to properly weigh the evidence." *State v. Pickett*, 2009-NMCA-077, ¶ 21, 146 N.M. 655, 213 P.3d 805.

**{9}** Defendant first argues that there was insufficient evidence to prove her specific intent to injure Victim. "Specific intent to injure an individual is an essential element of the offense of aggravated battery." *State v. Lovato*, 1990-NMCA-047, ¶ 4, 110 N.M. 146, 793 P.2d 276; *see also* UJI 14-323 NMRA (requiring the state to prove a defendant's intent to injure an individual for the offense of aggravated battery). "It is settled law that a showing of intoxication is a defense to a specific intent crime where the intoxication is to such a degree as would negate the possibility of the necessary intent." *State v. Romero*, 1998-NMCA-057, ¶ 22, 125 N.M. 161, 958 P.2d 119 (internal quotation marks and citation omitted). Criminal intent is an issue of fact to be determined by the finder of fact and may be inferred from established facts and circumstances. *See State v. Roybal*, 1960-NMSC-012, ¶ 6, 66 N.M. 416, 349 P.2d 332 (explaining that the issue of intent is a question for the jury and "may be inferred by the jury from the facts and circumstances established at the trial"). Here, the district court found the State proved Defendant had the specific intent to injure Victim, after considering Defendant's likely use of drugs. Accordingly, we conclude there was sufficient evidence regarding Defendant's specific intent.

**{10}** Defendant next argues that there was insufficient evidence because the State did not prove she was the person who stabbed Victim. Specifically, Defendant argues that the only evidence establishing that Defendant was the person who

6

stabbed Victim was Victim's testimony. Although Victim was impeached, the district court, as finder of fact, was free to accept or reject her testimony. *See State v. Hughey*, 2007-NMSC-036, ¶ 16, 142 N.M. 83, 163 P.3d 470 (explaining that "[i]t is the role of the fact[-]finder to judge the credibility of witnesses and determine the weight of evidence"); *see also State v. Nichols*, 2006-NMCA-017, ¶ 9, 139 N.M. 72, 128 P.3d 500 (concluding that "[i]f evidence is in conflict, or credibility is at issue, we accept any interpretation of the evidence that supports the [district] court's findings" (alteration, internal quotation marks, and citation omitted)). Moreover, "[t]he testimony of a single witness may legally suffice as evidence to support a jury's verdict." *State v. Riley*, 1970-NMCA-015, ¶ 6, 82 N.M. 298, 480 P.2d 693. Victim testified that Defendant was the person who stabbed her, which was consistent with her statements to the nurse and Detective Generotzky. Accordingly, we conclude there was sufficient evidence to support the district court's finding that Defendant stabbed Victim.

**B.     The Underlying Circumstances of Victim's Felony Conviction**

{11}     Having concluded that Defendant's conviction was supported by sufficient evidence, we proceed to Defendant's argument that the district court erred in prohibiting Defendant from cross-examining Victim on the underlying circumstances of her felony conviction. "We will only reverse a [district] court's ruling concerning the admission of evidence if the court abused its discretion."

7

*State v. Hamilton*, 2000-NMCA-063, ¶ 14, 129 N.M. 321, 6 P.3d 1043. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Otto*, 2007-NMSC-012, ¶ 9, 141 N.M. 443, 157 P.3d 8 (internal quotation marks and citation omitted).

**{12}** We need not address this argument because, even if the district court's ruling was erroneous, Defendant has not demonstrated reversible error. "[T]o warrant reversible error in the exclusion of testimony, [the] defendant must show a reasonable probability that the court's failure to allow the testimony contributed to [the] conviction." *State v. Gonzales*, 1991-NMSC-075, ¶ 27, 112 N.M. 544, 817 P.2d 1186. In determining whether an error is reversible, courts may consider whether evidence is cumulative. *See State v. Tollardo*, 2012-NMSC-008, ¶ 43, 275 P.3d 110 (explaining that "when reviewing an error's role in the trial, courts may . . . examine . . . whether the error was cumulative or instead introduced new facts" (alterations, internal quotation marks, and citation omitted)); *see also State v. Johnson*, 2004-NMSC-029, ¶ 38, 136 N.M. 348, 98 P.3d 998 (defining cumulative evidence as "additional evidence of the same kind tending to prove the same point as other evidence already given" (internal quotation marks and citation omitted)). Given the fact that Defendant impeached Victim's credibility on several other occasions, the introduction of one more piece of impeachment evidence would have merely been cumulative. In light of the totality of the circumstances

8

surrounding the excluded evidence, Defendant has failed to show a reasonable probability that the district court's ruling contributed to her conviction. *See Tollardo*, 2012-NMSC-008, ¶ 43 (explaining that the harmless error analysis requires courts to "evaluate all of the circumstances surrounding the error"). Accordingly, we conclude the district court's ruling did not rise to the level of reversible error.

**{13}** Defendant also argues that the district court's exclusion of this evidence violated her constitutional right to present a defense. "We acknowledge the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *State v. Lasner*, 2000-NMSC-038, ¶ 24, 129 N.M. 806, 14 P.3d 1282 (internal quotation marks and citation omitted). Considering Defendant failed to preserve this constitutional claim in the district court, we review this issue for fundamental error. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the [district] court was fairly invoked."); *State v. Zamarripa*, 2009-NMSC-001, ¶ 33, 145 N.M. 402, 199 P.3d 846 (explaining that "[a] party must assert its objection and the basis thereof with sufficient specificity to alert the mind of the [district] court to the claimed error" (internal quotation marks and citation omitted)); *see also State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 (holding that appellate courts review unpreserved issues for fundamental error). "The doctrine of fundamental error is to

be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." *Id.* ¶ 14 (internal quotation marks and citation omitted). In the alternative, a conviction will be reversed under the doctrine of fundamental error "where, notwithstanding the apparent culpability of the defendant, substantial justice has not been served." *Campos v. Bravo*, 2007-NMSC-021, ¶ 18, 141 N.M. 801, 161 P.3d 846 (internal quotation marks and citation omitted). "Substantial justice has not been served when a fundamental unfairness within the system has undermined judicial integrity." *Id.*

{14} Given the evidence supporting Defendant's conviction for aggravated battery, we cannot say that Defendant is indisputably innocent. *See State v. Trujillo*, 2002-NMSC-005, ¶ 60, 131 N.M. 709, 42 P.3d 814 (concluding no fundamental error exists where substantial evidence supports the defendant's convictions and the defendant failed to demonstrate circumstances that shock the conscience or show a fundamental unfairness). We therefore discuss whether the district court's exclusion of this evidence resulted in a fundamental unfairness that undermined judicial integrity. We are not faced with a situation wherein the district court wholly prevented Defendant from cross-examining a witness. *See, e.g., Chambers v. Mississippi*, 410 U.S. 284, 287, 294, 302 (1973) (holding that the state's rule preventing the defendant from cross-examining a critical witness who

confessed to the crime for which the defendant was charged violated the defendant's right to a fair trial). Rather, the district court excluded a relatively narrow scope of testimony intended to impeach Victim's credibility. Indeed, Defendant impeached Victim on several other occasions. We therefore cannot say the district court's ruling resulted in a fundamental unfairness that undermines the integrity of the judicial system. *Cf. State v. Stephen F.*, 2008-NMSC-037, ¶ 6, 144 N.M. 360, 188 P.3d 84 (concluding that "[a] defendant's right to confront and to cross-examine is not absolute" (internal quotation marks and citation omitted)). Accordingly, we conclude the district court's ruling did not constitute fundamental error.

**C.     Ineffective Assistance of Counsel**

**{15}**     Defendant finally argues that defense counsel was ineffective. "Criminal defendants are entitled to reasonably effective assistance of counsel." *State v. Crocco*, 2014-NMSC-016, ¶ 12, 327 P.3d 1068 (internal quotation marks and citation omitted). "To establish a prima facie case of ineffective assistance, a defendant must first show that counsel's performance fell below that of a reasonably competent attorney." *State v. Barela*, 2018-NMCA-___, ¶ 17, ___P.3d___ (No. A-1-CA-35355, Aug. 2, 2018) (alteration, internal quotation marks, and citation omitted). "Second, a defendant must show that counsel's deficient performance prejudiced the defense such that there was a reasonable

11

probability that the outcome of the trial would have been different." *Id.* (internal quotation marks and citation omitted). "[A]n appellate court should presume that [counsel's] performance fell within a wide range of reasonable professional assistance." *State v. Roybal*, 2002-NMSC-027, ¶ 21, 132 N.M. 657, 54 P.3d 61 (internal quotation marks and citation omitted). "Our Supreme Court has expressed a preference for bringing ineffective assistance claims through habeas corpus proceedings, rather than on direct appeal." *Barela*, 2018-NMCA-___, ¶ 17. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Roybal*, 2002-NMSC-027, ¶ 19. "We review the legal issues involved with claims of ineffective assistance of counsel de novo and defer to the findings of fact of the district court if substantial evidence supports the court's findings." *State v. Hobbs*, 2016-NMCA-006, ¶ 18, 363 P.3d 1259 (alterations, internal quotation marks, and citation omitted).

{16}    Defendant argues that defense counsel was ineffective in failing to pursue self-defense. "[I]f on appeal we can conceive of a reasonable trial tactic which would explain the counsel's performance, we will not find ineffective assistance." *Roybal*, 2002-NMSC-027, ¶ 21. "Counsel's choice of defenses will not be

12

disturbed unless the choice appears wholly unreasoned or deprives the defendant of his only defense." *State v. Baca*, 1993-NMCA-051, ¶ 34, 115 N.M. 536, 854 P.2d 363. However, defense counsel's decision to attack the actus reus and specific intent rather than pursuing self-defense cannot be said to have been wholly unreasonable in light of the dearth of evidence establishing an actual or reasonable fear of death or great bodily harm. *See* UJI 14-5183 NMRA (explaining that a defendant acts in self-defense if "[t]here was an appearance of immediate danger of death or great bodily harm to the defendant, . . . [t]he defendant was in fact put in fear of immediate death or great bodily harm, . . . and [t]he apparent danger would have caused a reasonable person in the same circumstances to act as the defendant did"). Moreover, defense counsel's choice of defenses did not deprive Defendant of his only defense, as evidenced by defense counsel's use of two other defenses that were consistent with the evidence. *Cf. Baca*, 1993-NMCA-051, ¶ 34 (citing defense counsel's failure to tender jury instructions on the defendant's sole defense, thereby resulting in no presentation of a defense, as an example of depriving the defendant of his only defense). We thus conclude Defendant has failed to establish that defense counsel's performance was deficient. However, our decision does not preclude Defendant from pursuing this issue in habeas corpus proceedings.

**III.   CONCLUSION**

{17}     The judgment and sentence are affirmed.

{18}     **IT IS SO ORDERED.**


_____

**MICHAEL E. VIGIL, Judge**


**WE CONCUR:**


_____

**J. MILES HANISEE, Judge**


_____

**JULIE J. VARGAS, Judge**

14